**PRETZEL & STOUFFER, Chartered, Plaintiff–Appellee,**

v.

**IMPERIAL ADJUSTERS, INC., Defendant–Appellant.**

No. 92–2095.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1993.

Returned Dec. 6, 1993.

Resubmitted March 8, 1994.*

Decided June 29, 1994.

---

\* This case has been resubmitted following correction of jurisdictional matters outlined in our order of December 6, 1993. As initially submitted for our review, the judgment of the district court was directed to less than all the parties. Judg-

Robert M. Chemers, Pretzel & Stouffer and Robert J. Franco, Bollinger, Ruberry & Garvey, Chicago, IL, for plaintiff-appellee.

Thomas A. Mavridis, Mavridis & Associates, Itasca, IL, for defendant-appellant.

Before POSNER, Chief Judge, CUDAHY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

In this case a defendant who was defaulted and had a default judgment entered against ment has now been entered as to both Imperial Adjusters, Inc., (docket entry of April 28, 1992), and Savoy Reinsurance Company, Ltd., (judgment entry of January 20, 1994). Upon the filing of a second notice of appeal by Imperial Adjusters, Inc., a new (and additional) cause number (94–1376) was assigned to this matter. The filing of a second notice of appeal was unnecessary under Fed.R.App.P. 4(a)(2) and the terms of this court's order of December 6, 1993. The original notice of appeal filed by Imperial Adjusters, Inc., sprang into effect once the district court entered judgment as to the remaining defendant, Savoy Reinsurance Company, Ltd., on January 20, 1994. Savoy Reinsurance Company, Ltd., has not appealed the judgment against it. This court now has jurisdiction.

it seeks relief. This case began when the law firm of Pretzel & Stouffer, Chartered, filed a complaint against Imperial Adjusters, Inc., on September 23, 1991, alleging that Imperial, and co-defendant Savoy Reinsurance Co., Ltd., owed Pretzel $132,000 in unpaid legal fees. On November 14, 1991, counsel for Imperial, filed his appearance, and on November 19, Imperial filed its answer to Pretzel's complaint.

On January 17, 1992, Imperial filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(C). Pretzel responded, on February 11, by filing a motion for leave to file a First Amended Complaint. A copy of the First Amended Complaint was attached to Pretzel's motion.

The First Amended Complaint contained two counts. The first count was a reiteration of the original complaint's claim for legal fees. The second count was new. It was a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, alleging that Imperial made misrepresentations which induced it to continue to provide legal services which Imperial never intended to pay for.

A hearing was held on February 20, 1992, regarding Pretzel's motion to file its amended complaint. At that time Pretzel filed its amended complaint. The district court ordered Imperial to answer by March 5. A status hearing was set for March 24, 1992.

Imperial did not file an answer by March 5; nor did Imperial's attorney attend the status hearing on March 24. At the time of the hearing, nearly three weeks after it was required to file an answer, Imperial still had not answered Pretzel's First Amended Complaint. At the status hearing the district court entered an order of default against Imperial and set the matter for prove-up on April 7, 1992.

One week after the court entered the default of Imperial, on March 31, 1992, Imperial filed a motion requesting that the default be vacated. Imperial also submitted for filing an answer to the Amended Complaint with the court, but failed to request leave of court for such a filing. Imperial also failed to serve a copy of its answer upon Pretzel.

Imperial's tendered answer contained general denials of the new allegations in the second count of the First Amended Complaint. Imperial's answer also contained an affirmative defense, which stated that it was not liable to Pretzel for any damages because it was merely the agent of Savoy.

Imperial's motion to vacate the default was set for hearing on April 7, 1992, at the same time as Pretzel's prove-up. At the April 7 hearing counsel for Imperial attempted to explain his absence from the March 24 status hearing. He stated that he had failed to properly calendar the date. Also, he said he had not received a minute order from the clerk of the court. The court responded that it does not send out minute orders of status hearing dates; and that counsel must keep track of these dates themselves.

Because Pretzel first saw Imperial's answer to their amended complaint at the hearing, the court continued the hearing until April 9, 1992, giving Pretzel two days to review the answer and to respond.

At the hearing on April 9 the court asked Imperial if it had a meritorious defense to Pretzel's complaint, including the new count under the Consumer Fraud Act. Counsel for Imperial responded by referring to its agency defense. The court concluded that this was not a defense to the consumer fraud claim, and that Imperial had therefore not raised any meritorious defense at all to the second count of Pretzel's First Amended Complaint. The court then denied Imperial's motion to vacate the default and set a new prove-up date of April 23, 1992. On that date the court ordered default judgment entered against Imperial in the amount of $132,408.18.

## ANALYSIS

At issue in this case is whether or not the trial court erred when 1) it denied Imperial's motion to vacate the default and 2) subsequently entered default judgment against Imperial.

### A. Standard of Review

■ Relief from entry of a default requested prior to entry of judgment is gov-

erned by Fed.R.Civ.P. 55(c). A request to set aside a default judgment is controlled by Rule 60(b). However, the standard of review is the same under both Rule 55(c) and Rule 60(b). *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 250 (7th Cir.1990). Abuse of discretion is the standard we apply when reviewing the denial of a motion to vacate a default order and when reviewing a default judgment. However, the test is more liberally applied in the Rule 55(c) context. *United States v. DiMucci*, 879 F.2d 1488, 1495 (7th Cir.1989). The district court will be found to have abused its discretion only if we conclude that "no reasonable person" could agree with its judgment. *Harold Washington Party v. Cook Co., Ill. Democratic Party*, 984 F.2d 875 (7th Cir.1993); *Narayan*, 908 F.2d at 251.

## B. Denial of the Motion to Vacate

It is undisputed, and the facts amply demonstrate, that a default was properly entered against Imperial on March 24, 1992. The relevant rule states that default should be entered against any party "against whom affirmative relief is sought [who] has failed to plead or otherwise defend as provided" by the Federal Rules. Fed.R.Civ.P. 55(a). Imperial had not filed an answer by the date it was required to do so. In addition, Imperial's attorney failed to attend a status hearing. Imperial therefore failed to "plead or otherwise defend" and was correctly defaulted. Imperial claims, however, that the district court abused its discretion when it denied Imperial's motion to vacate the default.

■ In order to vacate an entry of default the moving party must show: (1) good cause for default (2) quick action to correct it and (3) meritorious defense to plaintiff's complaint. *United States v. DiMucci*, 879 F.2d 1488, 1495 (7th Cir.1989).

### 1. Good Cause for Defaulting?

■ The defaulting party must show good cause for its default or the default order will not be vacated. *Id.* In this case, on the date the court entered the default order Imperial had not yet filed its answer even though three weeks had passed since the deadline for filing. It was not until a week after that, at the prove-up hearing for the default judgment, that Imperial finally submitted an answer for filing. Moreover, even at that late date, Imperial failed to move for leave to file the answer, and failed to provide a copy of the answer to opposing counsel.

Imperial demonstrated no good cause for the late submission of its answer. Imperial's counsel claimed that he had difficulties communicating with his clients. This is not an uncommon problem, but the solution to it is emphatically not to ignore filing deadlines. Imperial's attorney could have requested more time to answer if he was having difficulties, as he was allowed to do under Fed. R.Civ.P. 6(b).

Furthermore, we have previously found specifically that lack of communication between attorney and client was not a basis for showing of good cause in this context. *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1207 (7th Cir. 1984). Maintaining communication during the course of litigation is the responsibility of both attorneys and their clients. Mere lack of communication does not excuse compliance with the rules, or from the penalties for failing to do so.

The failure to file an answer on time was not the only problem faced by counsel for Imperial. He also did not appear at the March 24 status hearing, and he was not able to produce a valid excuse for his absence. He claimed to have mis-calendared the date. Mis-calendaring a date is certainly a plausible mistake, but it is the attorney's mistake and he and his client are responsible for the consequences. *Dimucci*, 879 F.2d at 1496. (An attorney's conduct will be imputed to his client in this context.)

Counsel, when attempting to explain his absence from the status hearing initially told the court that he had been "late." When the court challenged the claim of mere tardiness, he immediately retracted the comment. He conceded that though he had been in the federal building that day, he had not been in the courtroom where the hearing was held. It is possible to read this colloquy to mean that counsel was attempting in some way to

mislead the court. The court itself suggested as much.

However, it seems more likely that counsel was trying to downplay his failure to attend the status hearing by initially saying he had been late rather than entirely absent. Rather than dishonest, counsel's remark seems merely to have been an ill-considered phrasing of his answer. Further sanction is not required and it does not otherwise change our analysis.

We have held that "routine back-office problems ... do not rank high in the list of excuses for default ..." *Connecticut National Mortgage Co. v. Brandstatter*, 897 F.2d 883, 884–85 (7th Cir.1990). Counsel's mistake regarding the date of the hearing, and communication problems with his clients, were just such "routine" problems. They *do* not establish good cause for defaulting.

### 2. Meritorious Defense?

■ The second count of the Amended Complaint charged Imperial with violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. S.H.A. 815 ILCS 505/2. Generally, the Consumer Fraud count consisted of an accusation that an agent of Imperial misled Pretzel by promising payment when Imperial never intended to pay. Imperial's answer to the Amended Complaint consisted of denials, and a blanket claim that it had a "meritorious defense in this matter because it is only the agent of the disclosed principal who is the other defendant in this matter."

At the hearing on April 9, counsel for Imperial had an opportunity to state a meritorious defense to the Consumer Fraud count. The court told counsel that he had so far failed to do so, and that if he did not then and there articulate a meritorious defense the court would not vacate the default.

Counsel reiterated Imperial's agency defense. The attorney for Pretzel responded that an agency defense is appropriate to the contract claim, but not to the consumer fraud claim in the second count of the amended complaint. The court stated "that's correct," and concluding that no meritorious defense

had been presented by Imperial, denied the motion to vacate.

■ Imperial failed to do more than deny the consumer fraud claim. The assertion that Imperial was an agent of Savoy is irrelevant. Agents are liable for their own torts. *Goldstein v. Scott,* (4 Dist.1982) 108 Ill.App.3d 867, 64 Ill.Dec. 374, 379, 439 N.E.2d 1039, 1044. Furthermore, it is generally true under Illinois law that principals are not liable for the torts of their agents, where the agent is not an employee. *Anderson v. Marathon Petroleum Company,* 801 F.2d 936, 938 (7th Cir.1986). Even if Imperial was Savoy's agent, as they claim, they were certainly liable for their own torts.

It is a violation of the Illinois Consumer Fraud Act to make affirmative misrepresentations in the course of business to the detriment of consumers. This is what the second count accused Imperial of doing. Imperial was obliged to offer a meritorious defense to this charge. For whatever reason it offered no cognizable defense to the second count. What remains is Imperial's bare denial of Pretzel's allegations.

In *Narayan* we held that a defendant's response to a motion for default judgment was insufficient if it lacked a grounding in facts which would support a meritorious defense of the action by the non-moving party. *Narayan,* 908 F.2d at 252. We have also held that a meritorious defense requires more than a "general denial" and "bare legal conclusions." *Breuer Electric Manuf. Co. v. Toronado Systems of America,* 687 F.2d 182, 186 (7th Cir.1982).

Imperial failed to clear the first hurdle when it did not show good cause for its default. This would have been sufficient basis to refuse to vacate Imperial's default, even if it had a meritorious defense. *Zuelzke Tool and Engineering Co. v. Anderson,* 925 F.2d 226, 230 (7th Cir.1991) (In 60(b) context, even if a meritorious defense exists it cannot excuse carelessness.).

We need not analyze the third requirement, i.e. whether or not Imperial's action to correct the default was "quick" enough. Imperial needed to meet all three requirements, and it failed to meet two. Given these fail-

ures, the speed with which it may have acted to correct the default cannot change the result.

Imperial did not pass the three part test required to vacate an entry of default. The district court did not abuse its discretion when it denied the motion to vacate the default order.

## C. Default Judgment

As we stated in citing to *DiMucci* earlier, the elements required for vacating a default judgment are the same as the elements for setting aside an entry of default, but the tests for granting relief are more stringent in the case of a default judgment. *DiMucci*, 879 F.2d at 1495 (citing *Breuer*, 687 F.2d at 187). In *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 368 (7th Cir.1983), we held that because appellants had "failed to establish good cause for vacating the original entry of default, they clearly cannot satisfy the more stringent requirements for relief from the default judgment...." As shown above, Imperial failed to establish good cause to vacate the entry of default against them. Therefore it cannot meet the higher standard required for relief from the default judgment.

In prior cases the acts or omissions which led to a default judgment may have been more egregious than Imperial's conduct in this case. Nonetheless, the default judgment was within the judge's discretion. It is not an abuse of that discretion if the district court finds that docket conditions require a rigorous application of Rule 55. We have long since moved away from the position of disfavoring default judgments, and we are therefore increasingly reluctant to set them aside. *See Matter of State Exchange Finance Co.*, 896 F.2d 1104, 1106 (7th Cir.1990); *Dimmitt & Owens Financial, Inc. v. United States*, 787 F.2d 1186, 1192 (7th Cir.1986).

## CONCLUSION

The judgment of default entered in favor of Pretzel & Stouffer Chartered and against Imperial Adjusters, Inc., is AFFIRMED.