## In re Bruce and Paula BARR, Debtors.

## Keith and Sue REZIN, Plaintiffs,

### v.

## Bruce and Paula BARR, Defendants.

### Bankruptcy No. 93 B 05857.
### Adv. No. 93 A 01069.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 27, 1995.

---

**8.** *See infra,* notes 2 and 3.

Donald V. O'Brien, Carol J. Coplan, O'Brien O'Rourke & Hogan, Chicago, IL, for plaintiffs.

Leroy G. Inskeep, Angel Armas, Rudnick & Wolfe, Chicago, IL, for defendants.

### MEMORANDUM OPINION ON PLAINTIFFS' MOTION TO VACATE OR MODIFY DEBTORS' DISCHARGE

JACK B. SCHMETTERER, Bankruptcy Judge.

#### Introduction

This Adversary proceeding relates to the joint bankruptcy case filed by the debtors, Bruce Barr and Paula Barr (collectively "Debtors," "Defendants" or "the Barrs"), under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. Their bankruptcy case and this related Adversary were originally assigned to Bankruptcy Judge Squires of this District, but were subsequently reassigned to the undersigned Judge, along with other cases, for docket management purposes one week after the pending Motion was filed.

The plaintiffs, Dr. Keith Rezin and Sue Rezin (collectively "Plaintiffs," "Movants" or "the Rezins"), allege that they held an unsecured claim in the amount of $150,000.00 against Debtors based upon pre-petition state court litigation between the parties. To preserve that claim, Plaintiffs filed a two-count Adversary complaint, objecting to Debtors' proposed discharge under 11 U.S.C. § 727 and seeking to have their claim deemed nondischargeable under 11 U.S.C. § 523(a).

On the eve of trial in the Adversary before Judge Squires, the parties entered into an arrangement to resolve the dispute through their state court litigation rather than in the bankruptcy Adversary case. The full extent of that arrangement is unclear. However, the parties clearly agreed that both Debtors' bankruptcy case and this Adversary would be dismissed, leaving the parties to the pending state court litigation. Plaintiffs contend that, in exchange for their promise not to object to dismissal, Debtors also agreed not attempt discharge of their claim in any subsequent bankruptcy proceeding, but Debtors deny any such further agreement.

Aware of the arrangement for dismissal and in light of the failure of both sides either to file requisite pretrial compliance or alert

the Court to possible settlement, Judge Squires dismissed the Adversary "without prejudice" with his stated intent to permit the parties to litigate further in state court.

Plaintiffs subsequently appeared before Judge Squires and, without objection from Debtors pursuant to the undisputed agreement, successfully moved to modify the automatic stay in order to continue their state court litigation. Plaintiffs filed motions in state court to reopen that pending litigation immediately thereafter.

Eight days after the stay was modified, Debtors appeared before Judge Squires and, pursuant to the agreement, moved to dismiss their bankruptcy case. Plaintiffs' counsel, however, also appeared at that hearing. He questioned the dismissal of Debtors' bankruptcy, arguing that Debtors had not yet executed any document memorializing their alleged additional promise not to reseek bankruptcy protection with respect to Plaintiffs' claim. Plaintiffs wanted language to that effect included in the dismissal order. In response, Debtors withdrew their voluntary motion to dismiss.

Two weeks later, a discharge order was entered in Debtors' bankruptcy case, putting into effect the statutory injunction enjoining Plaintiffs from continuing with their pending state court litigation. Shortly afterwards, Plaintiffs' counsel recognized what had happened. He quickly moved before the Bankruptcy Court to vacate or modify Debtors' discharge and to reinstate the dismissed Adversary proceeding.

By prior order dated and entered April 17, 1995, this Adversary proceeding was reinstated. Prior dismissal thereof was vacated as to Plaintiffs' claim in Count II that the debt assertedly due to them is nondischargeable under 11 U.S.C. § 523(a). However, their motion was denied as to their objections in Count I to Debtors' discharge under 11 U.S.C. § 727, and was also denied as to their motion to modify the discharge order. By pretrial order, Count II has been set for trial. This opinion sets forth the reasons for that ruling.

## BACKGROUND

### *Underlying State Court Litigation*

This Adversary proceeding arises out of facts and circumstances surrounding pre-petition state court litigation between these same parties. In the spring of 1991, Dr. Keith Rezin and Sue Rezin, husband and wife, contracted to purchase a residential parcel of real estate located in Morris, Illinois, from Bruce Barr and Paula Barr, also husband and wife. By separate agreement, the Barrs further agreed to perform certain construction work on the property.

Notwithstanding the purchase and construction agreements, it is alleged that the Barrs did not prepare the property in time for the sale closing, and did not complete the agreed construction of the residence by the agreed date. However, because of the near state of completion, the availability of a temporary and conditional occupancy certificate issued by local authorities, and their pressing housing needs, the Rezins agreed to close their purchase, allegedly upon the Barrs' agreement to complete all remaining work and furnish an unrestricted occupancy certificate. Plaintiffs then took possession of the residence.

The Barrs did not complete construction of the home to the Rezins' satisfaction. As a result, the Rezins filed suit in the Circuit Court for Grundy County, Illinois, *Dr. Keith Rezin and Susan Rezin v. Bruce Barr and Paula Barr,* 91 CH 26, on November 13, 1991. They asserted many material deviations from the construction agreement and building code violations. Plaintiffs sought to rescind the contract and recover damages, both actual and punitive, on alleged grounds of consumer fraud, common law fraud, misrepresentation, and overreaching in the building and conveyance of residential property.

During pretrial preparation for the state court proceeding, and with the state court's approval, the parties agreed to submit to binding arbitration before an experienced local home builder to resolve some claims of deficits and omissions in construction of the residence. Trial was scheduled in state court

for mid-to-late March 1993 on all remaining issues not submitted for arbitration.

In December 1992, the arbitrator resolved some of the claims and awarded Plaintiffs roughly $90,000.00 to bring their residence into compliance with the construction agreement and applicable building codes. The Barrs refused to satisfy that award. Plaintiffs soon after filed a motion in state court for entry of judgment on the arbitration award.

### Debtors' Bankruptcy Filing

On March 16, 1993, during pendency of Plaintiffs' motion in state court for entry of judgment on the arbitration award and several days prior to the trial scheduled there on the remaining issues not resolved by arbitration, the Barrs filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Debtors listed Plaintiffs on their bankruptcy schedules as unsecured creditors holding claims of an as yet undetermined amount. Plaintiffs here assert an unsecured claim of $150,000.00.

### Plaintiffs' Adversary Complaint

The Rezins filed the above-entitled two-count Adversary complaint against Debtors. In Count I, they objected to Debtors' proposed discharge under 11 U.S.C. § 727. They alleged therein that the Barrs failed to disclose all of their assets in their bankruptcy schedules. They further alleged that Debtors executed an elaborate and deliberate scheme in the year preceding their filing in bankruptcy to transfer assets to various family members and others in an attempt to avoid paying creditors from those assets.

Count II, in the alternative, seeks to have Plaintiffs' asserted $150,000.00 unsecured debt deemed nondischargeable under 11 U.S.C. § 523(a). Debtors are charged therein with having committed fraudulent acts in connection with the construction services provided by defendants.

### Proceedings Before Bankruptcy Judge Squires

On March 15, 1994, Judge Squires issued a final pretrial order, setting both Counts of this Adversary for trial the week of October 31 through November 1, 1994. The parties were thereby ordered to file and exchange witness and exhibit lists and copies of exhibits at least fourteen days before the first scheduled hearing. They were further directed to submit and exchange proposed findings of fact and conclusions of law at least seven days before trial. The pretrial order expressly provided that failure to comply with those terms would result in appropriate sanctions, including, but not limited to, exhibit preclusion, witness prohibition, or full acceptance of opposing counsel's submitted proposed findings of fact and conclusions of law.

Over the next six months, Plaintiffs' counsel engaged in extensive discovery. On September 27, 1994, he filed a motion to continue the trial. Judge Squires denied that motion for reasons stated from the bench on October 4, 1994.

On or about October 14, 1994, the parties began discussing possible settlement. Although there is some dispute as to the extent of their resulting agreement, both sides clearly agreed that the Rezins' claim should be further litigated before the state court in Grundy County, Illinois, and that both the bankruptcy proceeding and this Adversary case should therefore be dismissed. Plaintiffs contend that Debtors also agreed not to make Plaintiffs' claim the subject of discharge attempts in any subsequent bankruptcy case, but Debtors deny the existence of any such further agreement.

On Thursday, October 27, 1994, two business days before trial before Judge Squires was scheduled to begin, Debtors filed their voluntary motion to dismiss their bankruptcy case and this Adversary proceeding under 11 U.S.C. § 305(a)(1), all pursuant to undisputed aspects of the agreement.

Neither party submitted or exchanged the requisite pretrial compliance, in recognition of their agreement to further litigate in state court. The parties further failed to notify Judge Squires of their agreement prior to the dates scheduled for trial on the matter, despite ample time to do so.

At the Court's morning motion call on October 31, 1994, several hours prior to the first scheduled trial hearing, the parties first alerted Judge Squires to their proposed settlement arrangement. He understandably felt obliged to take action in light of the parties' failure to file pretrial compliance or notify him of any agreed arrangement at an earlier date. Accordingly, by order entered that same date, he (1) barred both parties from entering any exhibits or introducing any witnesses at trial, and (2) dismissed the Adversary "without prejudice." Judge Squires indicated from the bench that, in dismissing the Adversary, the parties would then be free to proceed with their litigation in state court.[1]

On November 10, 1994, the Rezins appeared before Judge Squires and, without objection from the Barrs pursuant to their undisputed agreement, successfully moved to modify the stay in order to pursue their claim in state court. Again, Judge Squires indicated from the bench that the stay would be lifted to permit the parties to proceed with their dispute in state court.[2] An order was entered to that effect on November 14, 1994. Motions were subsequently filed in the Circuit Court in Grundy County, Illinois, to reset trial in the state court proceeding.

At the scheduled hearing set on November 17, 1994, to consider Debtors' pending motion to dismiss their bankruptcy case, Plaintiffs questioned the motion to dismiss on grounds that there was nothing proposed to bar Debtors from reseeking bankruptcy protection with respect to their claim. They expressed concern that, upon dismissal, Debtors would hide or encumber assets otherwise subject to the Rezins' state-based claim and then refile bankruptcy to avoid satisfying the impending state court judgment. Plaintiffs' counsel thought that Debtors' had agreed not to attempt to discharge their claim in a subsequent bankruptcy case and wanted words to that effect included in the dismissal order.

In response, Debtors' counsel withdrew their voluntary motion to dismiss in open court on December 5, 1994. At that time, Plaintiffs' counsel did not realize the import of that withdrawal of motion, and refocused his efforts on the pending state court litigation. Plaintiffs now assert through their counsel that, upon withdrawal of Debtors' motion to dismiss the bankruptcy proceedings, they expected an opportunity to litigate their claims in state court while the bankruptcy continued. However, by permitting Debtors' bankruptcy to proceed after their Adversary case was dismissed and without documented proof that Debtors agreed not to reseek bankruptcy protection from their claim, counsel exposed Plaintiffs to the risk that their claim would be discharged in bankruptcy and that they would be permanently enjoined by the statutory injunction entered upon discharge from continuing with their state court litigation despite the modification of stay. *See* 11 U.S.C. § 524(a)(2). That is exactly what transpired.

The discharge order was entered in Debtors' bankruptcy case two weeks later, on or about December 18, 1994. The Rezins, as scheduled creditors, were thereby permanently enjoined from continuing to litigate their underlying claim against Debtors in state court. The Rezins and their counsel

---

1. At the October 31, 1994, motion call, Judge Squires stated:

   Gentlemen, if the parties want to go litigate this matter in State Court if they can't settle it out, I don't have any problem with that conceptually.... I am inclined ... to dismiss this adversary but without prejudice. That way if there are appropriate claims between the parties ... [they] could be liquidated and determined in State Court....

   Oct. 31, 1994, *Tr.* at 9–10.

   Accordingly, the courtroom deputy is going to prepare the appropriate minute order sanctioning both sides as outlined and dismissing the adversary proceeding without prejudice. That means if the bankruptcy is ultimately dismissed or if ... a motion is served out to lift the automatic stay so that the State Court proceedings can go forward earlier than that ... Dr. Rezin's claims can be adjudicated in the pending State Court action, which has been stayed by virtue of this bankruptcy.

   *Id.* at 13–14.

2. On November 25, 1994, Judge Squires stated from the bench:

   [T]his motion [to lift the automatic stay] will be allowed so that the parties, if they can't settle, can litigate in the pre-petition existing state court litigation to their hearts' content.

   Nov. 25, 1994, *Tr.* at 2–3.

received a copy of that order, to their dismay, four days later on December 22, 1994.

### Plaintiffs' Motion to Vacate or Modify Discharge and Reinstate Adversary

On December 28, 1994, in recognition of what had happened, Plaintiffs' counsel moved to vacate or modify the December 18th discharge order and to reinstate this Adversary complaint which had been dismissed on October 31. He alleged therein that considerable injustice would be done by not permitting Plaintiffs to proceed on the merits of their claim and rewarding Debtors with a discharge despite agreement to the contrary. Plaintiffs urged Judge Squires to reinstate the Adversary in order to remain true to his demonstrated intent to permit the state court litigation to continue, as manifested by his earlier dismissal order of the Adversary "without prejudice" and his subsequent modification of the automatic stay. They further asked the Court to except their claim from the ordered discharge and modify the discharge injunction to enable them to proceed with the state court suit. Finally, they sought this Court's binding declaration that the remaining issues would be resolved finally in state court, after which the parties would be ordered to submit the resulting findings of fact and conclusions of law to Judge Squires, along with whatever supplemental evidence he felt necessary, in order to determine the nondischargeability of their claim.

### Proceedings Before This Court

On January 1, 1995, one week after Plaintiffs filed this Motion, Debtors' bankruptcy case was reassigned to the undersigned Judge along with other cases for docket management purposes.

Debtors moved on January 19, 1995, to strike the Rezins' motion to vacate or modify the discharge order. On February 10, 1994, an order was entered granting in part Debt-

ors' motion to strike, holding that the only appropriate manner in which revocation of Debtors' discharge could be sought would be by filing a new adversary proceeding pursuant to Fed.R.Bankr.P. 7001(4) and 11 U.S.C. § 727(d). Such a proceeding has not been filed.

On April 17, 1995, this Court held a status conference in Debtors' bankruptcy case. By pretrial order dated and entered that same date, this Court reinstated this Adversary proceeding and vacated the prior dismissal as to Count II under 11 U.S.C. § 523(a), but denied the Rezins' objection to discharge in Count I under 11 U.S.C. § 727 and denied their motion to modify Debtors' discharge order. Trial was set for July 17–26, 1995, on all issues presented in Count II. This opinion sets forth the reasoning behind those orders.

### DISCUSSION

#### A. Jurisdiction

This matter is properly before this Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the Northern District of Illinois. Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

#### B. Denial of Reinstatement of Count I: Objection to Discharge Under 11 U.S.C. § 727

The Rezins' request that this Court vacate dismissal of Count I of their prior Adversary complaint in order to permit them to object to Debtors' discharge pursuant to 11 U.S.C. § 727 is procedurally improper. They made that request after Debtors' discharge had been entered, and so their motion effectively seeks to vacate the discharge order. Discharge can be revoked only by way of an Adversary proceeding brought pursuant to Fed.R.Bankr.P. 7001(4) and 11 U.S.C. § 727(d).[3] Count I, as pleaded, does not

---

**3.** Rule 7001(4) provides in pertinent part: "[a]n adversary proceeding ... is a proceeding ... (4) to object to or revoke a discharge[.]" Fed. R.Bankr.P. 7001(4) (1995). Section 727(d) of the Bankruptcy Code provides:

[o]n request of the trustee, [or] a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

allege grounds in support of any revocation claim under 11 U.S.C. § 727(d). *See* Fed. R.Civ.P. 8(a) (1995) (applicable pursuant Fed. R.Bankr.P. 7008(a)); Fed.R.Civ.P. 12(b)(6) (1995) (applicable pursuant to Fed. R.Bankr.P. 7012(b)); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (plaintiffs must plead cause of action sufficient to allow them to offer evidence in support of their claim); *Perkins & Gaynor v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991) (same). This situation was made clear in open court and by order dated February 10, 1995, whereby Debtors' Motion to Strike Plaintiffs' Motion to Vacate was allowed "without prejudice to Rezins' right to file an Adversary to revoke the discharge." Plaintiffs have evidently opted not to file the required new Adversary complaint seeking revocation of discharge. Accordingly, dismissal will not be vacated as to Count I of Plaintiffs' present Adversary complaint.

### C. *Reinstatement of Count II: Exceptions to Discharge Under 11 U.S.C. § 523(a)*

Plaintiffs further request that this Court reinstate Count II of their prior Adversary complaint, whereby they sought to have their debt deemed nondischargeable under 11 U.S.C. § 523(a). The motion to vacate dismissal of the Adversary case was filed more than ten days after it was entered; therefore Fed.R.Civ.P. 59 (Fed.R.Bankr.P. 9023) does not apply, but Fed.R.Civ.P. 60 might. This Court has discretion, pursuant to Fed. R.Civ.P. 60(b) (made applicable in this Adversary pursuant to Fed.R.Bankr.P. 9024), to grant relief from previously-entered final orders in limited circumstances. Rule 60(b) provides in pertinent part:

> [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence,

> (1) such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the discharge;
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property of the estate, and knowing-

surprise, or excusable neglect; ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentations, or other misconduct of an adverse party....

Fed.R.Civ.P. 60(b) (1995).

### *Standards under Fed.R.Civ.P. 60(b)*

The burden of proof in seeking relief from a final judgment or order initially lies with the moving party. *Simons v. Gorsuch,* 715 F.2d 1248, 1252 (7th Cir.1983). Plaintiffs must establish that they qualify for Rule 60(b) relief by "clear and convincing evidence." *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir.1995) (citation omitted); *Simons,* 715 F.2d at 1252. However, whether to grant relief requested under Rule 60(b) is left largely to the trial court's discretion. *Pretzel & Stouffer v. Imperial Adjusters, Inc.,* 28 F.3d 42, 45 (7th Cir.1994). Rule 60(b) is an extraordinary remedy, designed to address mistakes attributable to exceptional circumstances and not mere erroneous applications of law by a trial court. *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir.1995) (citation omitted); *see also Parke–Chapley Constr. Co. v. Cherrington,* 865 F.2d 907, 915 (7th Cir.1989) ("[A]n appeal ... rather than a FRCP 60(b) motion, is the proper avenue to redress mistakes of law committed by a trial judge."); *Soler v. Waite,* 989 F.2d 251, 253 (7th Cir. 1993) (same). Care must be taken when considering Rule 60(b) relief to maintain proper balance between the desire to serve justice on the merits and the need to preserve the stability of final adjudications. *Lonsdorf,* 47 F.3d at 897.

### *Rule 60(b)(1): Mistake, Inadvertence, Surprise, or Excusable Neglect*

Rule 60(b)(1) permits a court to vacate a prior final order or judgment entered notwithstanding "mistake, inadvertence, surprise or excusable neglect" of the movant, adverse litigants, the clerk, or even the court.

> ly and fraudulently failed to report the acquisition of[,] or entitlement to[,] such property, or to deliver or surrender such property to the trustee; or
> (3) the debtor committed an act specified in subsection (a)(6) of this section.
> 11 U.S.C. § 727(d) (1995).

Fed.R.Civ.P. 60(b)(1) (1995); *see also* 7 *Moore's Fed.Prac.* ¶ 60.22[1], p. 60–174 (1995). As noted, Rule 60(b) relief is largely discretionary. *Pretzel & Stouffer*, 28 F.3d at 45. Courts weigh a variety of factors when considering whether exceptional circumstances merit Rule 60(b)(1) relief, not limited to but including the following: need to protect finality of judgments; appropriateness of appeal as alternative grounds for relief; desire to try issues on the merits; timeliness of the motion; whether any decision has yet been rendered on the merits; whether a meritorious claim or defense exists which the movant has not yet had opportunity to present; and the extent to which the adverse party would be prejudiced by the requested relief. *See Lonsdorf*, 47 F.3d at 897; *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir.1994); *Pretzel & Stouffer*, 28 F.3d at 45; *United States v. DiMucci*, 879 F.2d 1488, 1495 (7th Cir.1989); *see also* 7 *Moore's Fed.Prac.* ¶ 60.19, pp. 60–164–66 (1995).

Debtors assert that there has been no mistake upon which to grant relief under Rule 60(b). Rather, they note only "tactical errors" made by Plaintiffs' counsel that led to dismissal of Plaintiffs' Adversary claim and Debtors' eventual discharge.

Debtors also contend that Plaintiffs' counsel erred by not filing requisite pretrial compliance, and that failure alone led to dismissal of the Adversary "without prejudice." This argument cannot be seriously made, however, as Debtors' counsel were equally at fault for not filing their own pretrial compliance. The Court dismissed Plaintiffs' Adversary "without prejudice" because of the parties' mutual failure to comply with the Final Pretrial Order. Debtors should not be permitted to reap unintended benefit from dismissal of this Adversary where they were equally responsible for the events leading up to dismissal, were that the only consideration.

Counsel for both sides now assert that their opponent agreed to inform Judge Squires in advance of trial that agreement had been achieved. However, regardless of who promised to alert the Court, both sides bear the ultimate responsibility for failure to so notify. Because that mistake was mutual, Debtors can claim no benefit from the fortuity of the parties' shared oversight.

Debtors contend that Plaintiffs' counsel further erred by objecting to Debtors' motion to dismiss their bankruptcy case and by then permitting Debtors to withdraw their motion voluntarily and without objection. Debtors correctly argue that, had Plaintiffs raised no question about their motion to dismiss the case, they could have proceeded with litigation in state court as the parties agreed. However, Plaintiffs objected not so much to the substance of dismissal, but essentially questioned the form of the proposed dismissal order. Plaintiffs sought to have the dismissal order restrict Debtors' ability to re-seek protection from Plaintiffs' claim in a future bankruptcy proceeding, a provision that Plaintiffs' counsel contended was agreed to have been included.

An attorney's conduct may have mortal consequences for his or her client's case. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1117 (7th Cir.1994) (citation omitted). The Seventh Circuit has repeatedly held that the "inadvertence" or "excusable neglect" necessary to warrant relief under Rule 60(b)(1) is more than mere negligence or carelessness.[4] By not memorializing terms of their settlement arrangement, counsel for both sides unwittingly exposed their clients to risks.

Debtors now assert the absence of any agreement at all, but their actions to date are inconsistent with such a contention. The parties agree that Debtors first approached Plaintiffs with settlement discussions. Both

4. *See United States v. Indoor Cultivation Eqpt. from High Tech Indoor Garden Supply*, 55 F.3d 1311 (7th Cir.1995); *Dickerson v. Bd. of Education of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir.1994) (attorney negligence, whether gross or otherwise, provides no basis for avoiding final judgment under Rule 60(b)); *Gudmundsson*, 35 F.3d at 1117 ("The remedy for innocent and truly deserving litigants who be-

come the victims of an attorney's professional negligence is a suit for malpractice." (citation omitted)); *Lomas & Nettleton Co. v. Wiseley*, 884 F.2d 965, 967 (7th Cir.1989); *North Central Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164, 167 (7th Cir.1988); *Bershad v. McDonough*, 469 F.2d 1333, 1337 (7th Cir. 1972).

parties acted in accordance with the agreement to dismiss both the Adversary and the bankruptcy case so litigation could proceed in state court. Neither side complied with the Court's final pretrial order in reliance on that agreement. Judge Squires recognized the parties' intent to litigate in state court when he dismissed the Adversary without prejudice and even briefly outlined two alternative paths the parties could take to expedite their return to state court.

Plaintiffs subsequently moved to lift the stay without objection from Debtors in accordance with their undisputed agreement. Judge Squires granted that motion, as was consistent with his stated intention to permit the parties to return to state court. Only when Debtors finally moved to dismiss their bankruptcy case, without including any language in the order to bar attempt to discharge Plaintiffs' claim in a subsequent bankruptcy proceeding, did a question arise. Plaintiffs expressed concern that Debtors would, upon release from bankruptcy, immediately conceal or encumber assets they allegedly failed here to report on their schedule so as to avoid subjecting those assets to Plaintiffs' impending state court judgment. Accordingly, they questioned Debtors' motion to dismiss in hope that the Court would include language in the dismissal order to protect their stated concerns.

At that point, Debtors' counsel evidently saw an opportunity to hoist Plaintiffs' counsel "on his own petard," to borrow from Shakespeare. Rather than pursue the agreed dismissal of the bankruptcy, Debtors chose to withdraw their motion. Since this Adversary case had earlier been dismissed as agreed, Debtors' counsel surely recognized that Plaintiffs' claim would therefore soon be discharged. Plaintiffs thereafter mistakenly and through tactical error failed to take further action in bankruptcy court and instead proceeded with the state court litigation. Perhaps Plaintiffs' counsel believed Debtors would redraft the dismissal order to comply with Plaintiffs' understanding of their settlement arrangement. Or perhaps he relied upon Judge Squire's stated intent to allow the parties to litigate in state court "to their heart's content" and assumed, erroneously,

that the Bankruptcy Judge would monitor their bankruptcy concerns so as to permit them to try their case on the merits in state court. Instead, as provided by federal bankruptcy law, a discharge order soon issued, thereby enjoining the state court litigation.

However, this circumstance does not meet any of the grounds under Rule 60(b)(1) earlier described. A tactical error by Plaintiffs' counsel does not add up to grounds under that Rule.

### Rule 60(b)(3): Fraud, Misrepresentation, or Other Misconduct of Adverse Party

█ Relief, however, is merited by Plaintiffs under Rule 60(b)(3). Rule 60(b)(3) permits a court to grant relief from a final order for fraud, misrepresentation, or other misconduct by an adverse party. Fed.R.Civ.P. 60(b)(3) (1995). To obtain relief pursuant to Rule 60(b)(3), Plaintiffs must demonstrate that they have a meritorious claim or defense but that they were prevented from fully and fairly presenting their case at trial because of Debtors' fraud, misrepresentation, or misconduct. *See Lonsdorf*, 47 F.3d at 897 (citation omitted); *Simons*, 715 F.2d at 1252. They need not, however, demonstrate that their meritorious defense would have altered the outcome had they been permitted to present their case. *Lonsdorf*, 47 F.3d at 897 (citation omitted). Rule 60(b)(3) should be wielded to protect the fairness of the proceedings, not necessarily the correctness of the end result. *Id.*

The key and dispositive fact here is that Debtors agreed to dismiss their bankruptcy and their withdrawal of their motion for such dismissal was a violation of that agreement. Whether or not intended to trap the Plaintiffs, withdrawal of the dismissal motion had that effect. Such withdrawal amounted to misconduct under Rule (60)(b)(3).

Debtors' misconduct centered around their voluntary motion to dismiss and their subsequent withdrawal of that motion upon Plaintiffs' question of the form of the dismissal order. As previously found, Debtors' counsel undoubtedly knew that withdrawal of that motion would eventually lead to a discharge and ultimately dismissal of Plaintiffs' state

court claim. Regardless of whether Debtors promised not to reseek bankruptcy protection from Plaintiffs' claim, Debtors withdrew the motion to dismiss in contravention of the agreement. Despite Plaintiffs' questions about terms of the dismissal order, once the Adversary case was dismissed, Debtors should have pursued dismissal of their bankruptcy case as they had agreed, prior to entry of any discharge order. They did not do so. Plaintiffs have thus sufficiently established the "misconduct" of Defendants for Fed.R.Civ.P. 60(b)(3) purposes.

Plaintiffs have pleaded a viable cause of action under 11 U.S.C. § 523(a). If evidence supports their pleading, any debt due to them may well be exempt from discharge under that provision. Under the circumstances presented here, Plaintiffs should have an opportunity to present their evidence on the merits.

Thus, dismissal will be vacated as to Count II of Plaintiffs' previous Adversary Complaint.

### D. *Plaintiffs' Motion to Modify the Discharge Injunction*

In addition to reinstatement of their Adversary proceeding, Plaintiffs asked that the discharge injunction be modified so as to enable them to continue the pending state court litigation. They further requested that all issues remaining in the state court litigation be resolved finally in the pending state court action, after which the parties would be ordered to submit the resulting findings of fact and conclusions of law to this Court, along with whatever supplemental evidence might be necessary, in order to determine the nondischargeability of that claim.

The Bankruptcy Code does not expressly authorize modification of a discharge order, as distinct from revocation under 11 U.S.C. § 727(d). It is true that any court that issues an injunction has the inherent authority to modify that injunction for "good cause" on motion by an adversely affected party. *Hendrix v. Page*, 986 F.2d 195, 198 (7th Cir.1993) (citations omitted). Courts have discretionary authority to so modify an injunction whenever principles of equity so require. *Id. See also Hawxhurst v. Pettibone*, 40 F.3d 175, 182 (7th Cir.1994). Here, equity

requires that the parties be placed back in the same situation they were in as regards their respective disputes at the time of their agreement. That is best done by restoring the action under § 523 to our calendar rather than rewriting the § 524(a) injunction.

### CONCLUSION

For reasons stated herein, and by prior order dated and entered April 17, 1995, this Adversary proceeding was reinstated. Prior dismissal thereof was vacated as to Plaintiffs' claim in Count II that their debt is nondischargeable under 11 U.S.C. § 523(a), but denied as to their objections to discharge in Count I under 11 U.S.C. § 727 and denied as to their motion to modify the discharge injunction. The effect of that order was to retain the discharge order and make it subject to the outcome of the reinstated Adversary case. The stay remains modified so the state court case could continue. However, as previously announced, this Court has ordered the case set for trial here, to commence July 17, 1995. Judge Squires' order *in limine* barring the parties from using witnesses or exhibits is no longer in effect. However, should any party disregard the pretrial order this time, any striking of pleadings or a dismissal order will be with prejudice if appropriate under Fed.R.Bankr.P. 7016.

These parties first agreed to avoid a court trial through arbitration. That led only to more disputes. They then sought to avoid trial set in this court in favor of later trial in state court. That led to confusion and the mess that this opinion was required to resolve. The trial that has been ordered here will not be delayed nor will this Adversary case be dismissed without prejudice under any foreseeable circumstances.

Finally, since Plaintiffs contend that Debtors hid assets from the Chapter 7 Trustee, they are ordered to transmit any information they have in that regard to that Trustee for such investigation and action as he or she may choose to make if the allegations are supported by evidence.