139 F.3d 902
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Leonard D. PRENTICE, Plaintiff-Appellant,
v.
INFORMATION RESOURCES, INC., Defendant-Appellee.
 No. 97-2405.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 9, 1998*.
Decided Feb. 10, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied March 17, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 96 C 3819.
 Before BAUER, COFFEY, and MANION, Circuit Judges.
 ORDER
 CONLON, J.
 
 
 1
 Leonard Prentice sued Information Resources, Inc. (IRI) in September 1996 under Title VII of the Civil Rights Act of 1964, 42 U .S.C. § 2000e, and Section 1981 of the Civil Rights Act of 1871, 42 U .S.C. § 1981, alleging race discrimination and retaliation. Prentice asserts that IRI retaliated against him because of his race by failing to promote him, suspending him without pay, requiring him to participate in a remedial training program, and terminating his employment.[1] After the district court entered a default order against IRI for failing timely to answer Count II of the complaint, IRI successfully moved to vacate the default order. The district court then entered summary judgment in favor of IRI on all of the retaliation claims. Prentice appeals, asserting that the district court erred in vacating the default order and that it erred in entering summary judgment in favor of IRI regarding the retaliation claim for failing to promote him and for suspending him without pay.[2] We affirm.
 
 A. Motion to Vacate Default Order
 
 2
 IRI successfully moved to dismiss several of Prentice's claims and was ordered to answer the remaining claims by October 23, 1996. Prentice then filed a motion for reconsideration, contending that his Title VII retaliation claim under Count II, that he was retaliated against when he was suspended for a day and a quarter without pay, should not have been dismissed. The district court agreed and ordered IRI to file an answer to the retaliation claim under Count II by November 22, 1996. While timely answering the claims on October 23, 1996, as ordered, IRI failed to answer the reinstated Title VII claim on November 22, 1996, due to an internal docketing error. The district court granted Prentice's motion for an entry of default against IRI for failure to answer the reinstated claim. Just over a week later, IRI moved to vacate the default order and to file an answer, instanter, to the reinstated claim under Count II. The district court granted IRI's motion to vacate, stating that IRI's failure to answer the claim was due to excusable neglect and that Prentice had failed to show prejudice.
 
 
 3
 This court reviews the grant of a motion to vacate a default order for an abuse of discretion. See Dimmit & Owens Financial, Inc. v. United States, 787 F.2d 1186, 1193 (7th Cir.1986). "The district court will be found to have abused its discretion only if we conclude that 'no reasonable person' could agree with its judgment." Pretzel & Stouffer v. Imperial Adjusters, Inc., 28 F.3d 42, 45 (7th Cir.1994) (internal citation omitted). The party moving to vacate the default order must show: (1) good cause, (2) quick action to correct it, and (3) meritorious defense to plaintiff's complaint. Id.
 
 
 4
 We conclude that the district court did not abuse its discretion in granting IRI's motion to vacate the default order. IRI's counsel filed a timely answer to the claims remaining after the motion to dismiss was granted in part, and continued to defend the case during and after the time that the answer was due for the reinstated claim. Counsel stated that the failure to file the answer to the reinstated claim was due to an internal docketing error. The day that IRI was made aware by Prentice that he had filed a motion for a default order against IRI, it filed a motion to vacate the default order and for leave to file its answer, instanter. Finally, IRI asserted that its employment decisions as related to Prentice were based on his work performance and were consistent with IRI's employment policies and procedures; thus, a meritorious defense existed. Accordingly, we affirm the district court's decision to vacate the default order against IRI.
 
 B. Title VII Retaliation Claims
 
 5
 IRI hired Prentice in June 1992 as a Client Data Services (CDS) Assistant. Prentice's first four performance evaluations between June 1992 and June 1993 rated his overall performance as "Good," but specific comments were made regarding a need for improvement in following instructions, learning to listen to directions, improving accuracy, and being punctual. On June 30, 1993, Prentice's supervisor wrote a memorandum in which she noted four areas in which Prentice would need to improve his performance to avoid being placed on IRI's Performance Improvement Plan. In September, Prentice submitted several questions to management regarding possible racial discrimination at IRI.[3] Soon after, Christopher Bockay, Prentice's supervisor, concluded that Prentice's performance had improved and removed Prentice from "formal warning status." R. 68, Exh. H, at 2 (Affidavit of C. Bockay). Bockay told Prentice in a letter that he would need to demonstrate consistency in the four areas noted by his previous supervisor as well as perform at a "Very Good" or "Outstanding" level in order to be promoted to a CDS Associate. Id. (referencing Sept. 29, 1993 letter from Bockay to Prentice).
 
 
 6
 On December 1, 1993, Prentice submitted another question to management regarding perceived racial discrimination. On December 6, 1993, several female employees complained that Prentice had acted inappropriately toward them. After an investigation, IRI's Employee Relations Manager, Geoff Bacon, discussed the situation with Prentice who signed a memo indicating that he was responsible for several instances of inappropriate gestures toward female employees. R. 68, Exh. K. Prentice was suspended for one and a quarter days without pay.
 
 
 7
 On December 9, 1993, Prentice received his next performance evaluation. He was rated "Good" overall, but problems were noted with his attendance and punctuality, and his professional relationship with clients on an important account was criticized; thus, he was denied a promotion to CDS Associate at that time. Prentice was promoted in June 1994; however, his performance level subsequently declined. IRI terminated his employment on November 30, 1994, after he had been late to work seventeen times in two months and a co-worker had lodged another complaint against him for inappropriate gestures toward her. Prentice filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that he was not promoted in December 1993 due to his race. In March 1995 the EEOC issued a right-to-sue letter. See R. 68, Exhibit N.
 
 
 8
 On appeal, Prentice argues that the district court erred in granting summary judgment for IRI on his claims that he had been retaliated against when IRI failed to promote him (Count I) and suspended him for a day and a quarter without pay (Count II.). This court reviews a grant of summary judgment de novo and considers the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. See Drake v. Minnesota Mining & Mfg. Co., No. 97-1809, slip op. at 7 (7th Cir. Jan.21, 1998). In order to establish a prima facie case of retaliation, Prentice must show that: (1) he engaged in statutorily protected expression, (2) he suffered an adverse action by his employer; and (3) there was a causal link between the adverse action and the protected expression. Id. at 11. In order to demonstrate the causal link, Prentice must show that IRI would not have taken the adverse action "but for" the protected expression. See McKenzie v. Illinois Dep't. of Trans., 92 F.3d 473, 483 (7th Cir.1996).
 
 1. Failure to Promote
 
 9
 The district court concluded that Prentice had successfully demonstrated the first two elements of the prima facie case, but had failed to show that IRI's failure to promote him was causally connected to his statements concerning possible discrimination at IRI. Viewing the evidence in a light most favorable to Prentice, we believe that Prentice has shown a prima facie case of retaliation. On December 1, 1993, Prentice forwarded a question he had submitted to "Ron" for the fourth quarter CDS meeting, alleging that minority males continued to be absent from positions of authority at IRI and asking what could be done to "rectify their interminably stifling and discriminating circumstance." R. 1, Exh. D. Prentice then was denied promotion on December 9, 1993. The temporal proximity between the failure to promote Prentice and comments questioning IRI's policies regarding promotion of minority males supports an inference that the two are causally connected. See Johnson v. Sullivan, 945 F.2d 976, 980 (7th Cir.1991); see also Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago, 104 F.3d 1004, 1014 (7th Cir.1997).
 
 
 10
 Under the McDonnell-Douglas burden-shifting analysis, IRI then bears the burden of production to offer a legitimate, non-retaliatory reason for its action. See Johnson v. University of Wisconsin--Eau-Claire, 70 F.3d 469, 479 (7th Cir.1995). This it has done and Prentice has failed to show that IRI's reasons for failing to promote him were pretextual. See id. IRI states that it did not promote Prentice in December 1993 because he did not satisfy its criteria necessary for promotion. R. 68, Exh. H. In a September 1993 letter to Prentice, Bockay, Prentice's supervisor, informed Prentice that he would be promoted to Associate only if he performed his Assistant CDS level responsibilities at a "Very Good" or "Outstanding" level. Prentice received a rating of "Good" in December 1993; thus he was not eligible for promotion. However, six months later, Prentice achieved the necessary ratings and was promoted to Associate.
 
 
 11
 Prentice attempts to rebut IRI's reason for not promoting him by stating that he did, in fact, meet all of the criteria necessary for promotion, and that Bockay indicated this to him one week prior to his December 9, 1993 evaluation. In support, Prentice offers his own statements and a one-page checklist of IRI criteria necessary for promotion, with all but one of the criteria check-marked. Prentice claims that Bockay presented this list to him, and told him that he was eligible for promotion the week before his December 9, 1993 evaluation. Prentice offers no verification from Bockay that this checklist was presented to Prentice or whether Bockay stated that Prentice was eligible for promotion. Prentice's statements and the lone checklist cannot be considered in opposition to IRI's motion for summary judgment. See McKenzie, 92 F.3d at 484 (stating that plaintiff's "own recitation" of events with no deposition testimony or other evidence in support could not be considered in opposition to defendant's motion for summary judgment).
 
 2. Suspension
 
 12
 Prentice asserts that he was retaliated against because he was suspended for a day and a quarter after he rebutted allegations of sexual harassment, claiming, in part, racial discrimination. Viewing the evidence in a light most favorable to Prentice, he has established a prima facie case. He engaged in statutorily protected expression, he suffered an adverse employment action, and the timing again implies that the expression and the suspension were causally related. See Hunt-Golliday, 104 F.3d at 1014 ("[S]uspicious timing does constitute circumstantial, or indirect, evidence to support a claim of discrimination") (citation omitted). The burden of production then shifts to IRI to establish that the suspension was not pretextual. IRI claims that the suspension was a direct result of the sexual harassment allegations against Prentice. See Defendant's Rule 12M Statement, p 13 (citing Bockay affidavit, p 9). IRI's sexual harassment policy indicates that "it will enforce disciplinary action" against anyone who commits sexual harassment. See id. at p 10, Exh. J. This is sufficient to meet its burden of production.
 
 
 13
 Prentice argues that this basis for suspension is pretextual. Both Prentice and IRI state that Prentice had a meeting regarding the sexual harassment allegations with Bacon on December 7, 1993, and signed a memorandum agreeing that he had engaged in the behavior specified. Then, according to Prentice, he drafted a rebuttal to the December 7, 1993, memorandum, disavowing any admissions regarding the sexual harassment claims. He also stated at the end of the rebuttal that "any attempt(s) in departmental or corporate framing, harassing, or retaliation by individual(s) due to disdain of me personally ... or due to my out-spokeness on racial equity in the workplace, will not be tolerated." R. 73 (emphasis in original). Prentice asserts that it was after presenting rebuttal this to Bacon on December 9, 1993, that he was suspended for a day and a quarter.
 
 
 14
 Even accepting Prentice's allegation as true that he was not suspended until after he had submitted his rebuttal memo, it does not create a genuine issue of material fact as to whether the reason for the suspension was pretextual. Prentice has offered no evidence that IRI did not honestly believe that he had engaged in sexual harassment and suspended him on that basis. While the alleged temporal proximity between the rebuttal memo and the suspension is enough to meet his prima facie case, it is insufficient to establish pretext. Prentice's "subjective belief that the action was retaliatory and that the claimed reason[ ] [was] pretext does not alone create a genuine issue of material fact." See Johnson, 70 F.3d at 479.
 
 
 15
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 These were the claims that were remaining after the district court dismissed several claims based on IRI's motion to dismiss
 
 
 [2]
 In his notice of appeal, Prentice also stated that he was appealing from the district court's denial of his "Motion to Vacate or Amend Summary Judgment: A Motion to Re-Open Case," which the district court construed as a Rule 59 motion and denied. However, Prentice has not raised the district court's denial of his Rule 59 motion on appeal; thus, it is waived. However, even if we were to consider the claim, we would conclude that the district court did not abuse its discretion in denying the motion. See Britton v. Swift Trans. Co., 127 F.3d 616, 618 (7th Cir.1997)
 
 
 [3]
 In his brief, Prentice states that he began complaining of IRI's discriminatory practices in June 1993. However, the first documented evidence in the record consists of three messages which he sent to co-workers via electronic mail in September 1993. These messages forward questions that he had submitted to his supervisor for discussion during a "CDS meeting," and seek responses regarding IRI's promotion policies, its wage scales, and the general perception of minorities at IRI. The purpose and date of this referenced meeting are not provided; however, in an undated memo to Prentice, one Ned Heinbach provides answers to minority policy concerns raised by Prentice during the "Communications Meeting" on September 29, 1993