**Gregory C. JONES, Executor for the Estate of Barbara S. McEwen, Plaintiff–Appellee,**

v.

**Sandra Lee PHIPPS, a/k/a Sandra R. Phipps, Defendant–Appellant.**

No. 93–3157.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1994.

Decided Nov. 2, 1994.

---

Julia D. Mannix (argued), Laura Beth Miller, Davis, Mannix & McGrath, Chicago, IL, for plaintiff-appellee.

Ronald L. Bell (argued), Ronald L. Bell & Associates, Deerfield, IL, for defendant-appellant.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and TINDER, District Judge.*

TINDER, District Judge.

This appeal raises the single question of whether the district court's denial of a motion to vacate a default judgment was an abuse of discretion.

### I.  Background

Gregory C. Jones, as executor of Barbara McEwen's estate, filed a multi-count complaint against Sandra Phipps in the district court alleging, among other things, that Phipps stole cash and personal property from John and Barbara McEwen while she worked for them as a private nurse. The heart of Jones' complaint was a claim for recovery under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), accompanied by multiple state law claims. Federal jurisdiction rested on both the presence of a federal question, RICO, and the diversity of the parties. 28 U.S.C. §§ 1331, 1332(a)(1). After Phipps failed to respond to discovery requests, Jones filed a motion to compel discovery. During a conference on the motion, Phipps (and her attorney) told the court she lacked assets and was, therefore, essentially judgment proof. Apparently believing the case was not likely to be a fruitful one for the estate to pursue, and in an effort to effectuate an early resolution, the district court ordered Phipps to submit to an assets deposition and to produce documentation verifying her financial condition. Phipps failed to appear for the deposition and did not provide the financial documentation as ordered. Jones then filed a motion for a rule to show cause why Phipps should not be held in contempt. This prompted Phipps to respond by filing a detailed financial statement, listing major as well as trivial assets, purporting to demonstrate Phipps' penurious status. The bottom line of Phipps' financial statement was that, if believed, a judgment against her would be virtually uncollectible. At a hearing before a magistrate judge, to whom the district judge assigned this case upon consent of the parties pursuant to 28 U.S.C. § 636(c)(1), Phipps represented that her financial statement disclosed all her assets, reiterating to the court that she was judgment proof.

Several months later, Phipps was arrested in Wisconsin for allegedly selling stolen jewelry. Jones heard about the arrest and also learned police had searched Phipps' home and discovered jewelry, china, furniture, silverware, art work, and other valuable items not listed on her financial statement, some of which allegedly belonged to the McEwen estate. Accordingly, Jones filed a motion under Rules 16(f) and 37 of the Federal Rules of Civil Procedure seeking a default judgment as a sanction against Phipps for her willful failure to disclose assets and her failure to participate in pretrial proceedings in good faith. Shortly thereafter, Phipps' attorney in this matter at the time, Robert Car-

---

* John Daniel Tinder, of the United States District Court for the Southern District of Indiana, sitting by designation.

rane, asked to withdraw from the case because he was under criminal investigation for purportedly selling jewelry Phipps had given him. Carrane's attorney filed an affidavit in the district court on November 6, 1992, stating she had informed Phipps' counsel in the Wisconsin criminal matter of the default motion and of Carrane's motion to withdraw, and that she had been assured by the Wisconsin counsel that the motions were brought to Phipps' attention sometime around November 5, 1992. On November 9, 1992, the district court allowed Carrane to withdraw on the condition he provide Phipps with a copy of an order which directed her to respond to the default motion by November 30, 1992, and setting a status hearing for December 3, 1992. Although Carrane mailed a copy of the order to Phipps on November 17, 1992, Phipps neither responded to the default motion by November 30 nor appeared for the December 3 status hearing. Likewise, she failed to appear for a January 4, 1993, "prove-up" hearing at which damages were to be established in preparation for the entry of a default judgment. *See* Fed.R.Civ.P. 55(b)(2). At no time did Phipps contact the court or seek a continuance of the hearings. An evidentiary hearing was held before the district court in Phipps' absence on January 4 at which Jones presented evidence on the merits of the case and on damages. On January 11, 1993, the court entered a default judgment against Phipps in the amount of $932,974.20, representing assessed damages in the amount of $310,991.40 which were trebled pursuant to the RICO statute, *see* 18 U.S.C. § 1964(c). Approximately five weeks later, on February 17, 1993, Phipps (by her new counsel in this case) filed a motion to vacate the default judgment under Federal Rule of Civil Procedure 60(b) and submitted the response to the default motion Phipps would offer if the default judgment would be set aside. Phipps attributed her failure to respond timely to the default motion to her attorney's unexpected withdrawal and to her detention in solitary confinement with limited access to either a telephone or documents necessary to formulate a response. She also offered excuses for her failure to list certain valuables (such as the jewelry and other items discovered by the police during the search of Phipps' residence) on her financial statement. In a detailed ruling, the district court rejected Phipps' excuses for failing to report her assets and for failing to respond to Jones' default motion, and denied Phipps' motion to vacate the default judgment. Phipps appeals that decision.

## II. Analysis

### A. Motion to Vacate the Default Judgment

■ Phipps' appeal demonstrates the often misunderstood relationship among default judgments, Federal Rule of Civil Procedure 60(b), and appellate review—a misunderstanding usually, as here, involving an unsuccessful attempt to secure review of a default judgment by appealing the denial of a motion to vacate the judgment. As many litigants do, Phipps chose to ask the district court to vacate the January 11, 1993, default judgment (as allowed under Rule 60(b)(1)) rather than immediately appealing the judgment. She did not file a notice of appeal of the judgment itself within the allowed thirty day period following entry of the default judgment, Fed.R.App.P. 4(a)(1), but instead waited until the motion to vacate was denied to file a notice of appeal which stated merely that she appealed from the district court's order "denying Defendant's motion to vacate the default judgment made pursuant to Rule 60(b)(1) entered on August 13, 1993." Appellant's App. at 1. This maneuver has repeatedly been held to allow review only of the denial of the motion to vacate the default judgment, not to raise the propriety of the underlying judgment itself. *Lee v. Village of River Forest*, 936 F.2d 976, 979 (7th Cir. 1991); *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir.1986). Support for this conclusion is derived both from the lateness and the content of Phipps' notice of appeal. As for the former, because she waited more than thirty days to file the notice of appeal, and took no action which might have tolled the running of that time period, *see, e.g.*, Fed.R.App.P. 4(a)(4)(F), Phipps forever lost the right to appeal the merits of the underlying default judgment. Besides the timing problem, the content of Phipps' notice of appeal is simply insufficient to include the

underlying default judgment as part of the appeal. Though Federal Rule of Appellate Procedure 3(c), which requires the notice of appeal to "designate the judgment, order, or part thereof appealed from," FED.R.APP.P. 3(c), is to be liberally construed, *Smith v. Barry*, 502 U.S. 244, ——, 112 S.Ct. 678, 681, 116 L.Ed.2d 678 (1992), designating merely the denial of the Rule 60(b) motion as the order appealed from in a notice of appeal has consistently been held insufficient to raise the propriety of the underlying default judgment. *Browder v. Director, Dep't of Corrections of Ill.*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); *Ellingsworth v. Chrysler*, 665 F.2d 180, 183 (7th Cir.1981). Despite purportedly disavowing a desire to question the underlying default judgment, Phipps proceeds to argue issues surrounding that judgment, such as the proportionality of the sanction to her conduct, the choice of a default judgment over other available sanctions and whether the default judgment violates the Eighth Amendment. Whether grounded in the untimeliness of the notice of appeal or the truncated content of the notice, appellate review of the denial of a Rule 60(b) motion simply does not "reach the merits of the underlying judgment." *Soler v. Waite*, 989 F.2d 251, 253 (7th Cir.1993). We decline to consider Phipps' criticisms of the default judgment as being well beyond our jurisdiction, instead narrowing our analysis to the district court's ruling on Phipps' motion to vacate that judgment under Rule 60(b)(1).

Rule 60(b)(1) provides that "[o]n a motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding" upon a showing of "mistake, inadvertence, surprise, or excusable neglect." FED.R.CIV.P. 60(b)(1). Our review of district court orders denying this relief is exceedingly deferential, *Zuelzke Tool & Eng'g Co., Inc. v. Anderson Die Castings, Inc.,* 925 F.2d 226, 228–29 (7th Cir.1991), and is limited to discerning whether the district court abused its discretion. *Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42, 45 (7th Cir.1994). Only if no reasonable person could agree with the district court's decision will it be disturbed. *Id.* Though this is a nearly insurmountable hurdle, limited review is not the same as *no* review, and the possibility always portends that the district court erred in refusing to vacate a default judgment. *Cf. Metlyn Realty Corp. v. Esmark*, 763 F.2d 826, 831 (7th Cir.1985) ("It is perhaps conceivable that a moving party could establish 'no reasonable man' could find that an error did not affect the result when the judge rendering the original decision has found no effect, but there cannot be many such cases."). As the Rule 60(b)(1) standard has developed, a specialized three-part standard has evolved which squarely places the burden on the moving party to show: (1) "good cause" for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint. *Pretzel & Stouffer*, 28 F.3d at 45; *United States v. DiMucci*, 879 F.2d 1488, 1495 (7th Cir.1989). This standard was originally formulated to evaluate a district court's decision concerning a motion to vacate an *entry* of default under Rule 55(c) of the Federal Rules of Civil Procedure, *Breuer Elec. Mfg. v. Toronado Sys. of Am.*, 687 F.2d 182, 185 (7th Cir.1982), but was eventually applied to structure decisions involving motions to set aside default *judgments* under Rule 60(b). *Id.* at 187. *See also Merrill Lynch Mortgage Corp. v. Narayan*, 908 F.2d 246, 250 (7th Cir.1990). While the tests are identical under either Rule 55(c) or Rule 60(b), respect for the finality of judgments results in the application of the test under Rule 60(b) circumstances—where a default *judgment* has been entered—to be much more limited and stringent. *Breuer*, 687 F.2d at 187. This narrowness is achieved by interpreting the three-part standard in light of the language of Rule 60(b)(1) which, by its very terms, establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment. *North Cent. Ill. Laborer's Dist. Council v. S.J. Groves & Sons Co.*, 842 F.2d 164, 167 (7th Cir.1988); *Ben Sager Chem. Int'l v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.1977).

1. ***"Good Cause."*** Phipps contends she had less than fifteen days between

the time she received notice of the motion for a default judgment and the deadline to respond (November 30, 1992). This was simply not enough time, she argues, given she was incarcerated and without counsel because her previous attorney had withdrawn from the case. Contrary to her assertion, however, Phipps had more than fifteen days to prepare a defense to the motion: Carrane (Phipps' first attorney), by his lawyer, provided copies of the notice of default to Phipps' Wisconsin criminal attorney. This lawyer brought the impending default to Phipps' attention sometime around November 5, 1992. Thus the time between notice and entry of default was more like twenty-five days than the fifteen she alleges. But the fact remains Phipps was incarcerated and without an attorney to handle this particular case during those twenty-five days. Unfortunately for Phipps, the district court did not abuse its discretion in finding neither her incarceration nor lack of an attorney—alone or combined—a sufficient basis upon which to premise either a finding of "good cause" for default or the required "excusable neglect" under Rule 60(b)(1). Although civil litigants who represent themselves ("pro se") benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant, e.g., *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam) (requiring liberal construction of pro se litigant pleadings); *Timms v. Frank*, 953 F.2d 281, 283–84 (7th Cir.1992) (extending rule of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), *cert. denied sub nom. Timms v. Coughlin*, —— U.S. ——, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992), requiring all pro se litigants to receive notice of summary judgment procedures before court may grant judgment against them), pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991); *Averhart v. Arrendondo*, 773 F.2d 919, 920 (7th Cir.1985). Not that Phipps was necessarily a "pro se" litigant in the formal sense of the term. Despite the withdrawal of the attorney handling this particular matter, Phipps was represented by an attorney in Wisconsin in the criminal case pending against her. That at-

torney received notice of the impending default in this case and communicated that notice to Phipps. Additionally, Phipps had access to yet another attorney during this period in connection with her divorce proceedings. Of course, as a general matter, it is ordinarily better to have some legal counsel rather than none, even counsel providing representation on unrelated matters (though at least Phipps' criminal matter appears related to this case). However, when seeking vacation of a default judgment on the grounds asserted by Phipps, her access to some legal counsel made her task of showing "good cause" or "excusable neglect" more difficult. See *C.K.S. Eng'g, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1208 (7th Cir.1984).

■ As for the fact Phipps was incarcerated during the twenty-five day period in which she had to respond to the notice of default, a jailed litigant ought to be treated neither worse, nor better, than any other party when it comes to the conduct of litigation unless some special circumstance of confinement interferes with her ability to manage legal affairs, *see Houston v. Lack*, 487 U.S. 266, 271, 108 S.Ct. 2379, 2382–83, 101 L.Ed.2d 245 (1988) (filing deadline for pro se prisoner litigant satisfied upon delivery of materials to prison official for mailing); *see also United States v. One Lot of $25,721.00 in Currency*, 938 F.2d 1417, 1422 (1st Cir.1991), or the prisoner's inability to contest entry of a default judgment was clearly beyond her control. *Zuelzke Tool & Eng'g Co., Inc.*, 925 F.2d at 229.

Thus neither simple incarceration nor lack of legal counsel on the particular matter at issue, by themselves, provide the requisite good cause for defaulting. Perhaps the presence of these and other extraordinary circumstances, such as the confluence of being placed in solitary confinement without access to any means of communication and lacking legal counsel might justify—or rather excuse—dereliction of litigation duties. See *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (setting aside default judgment under Rule 60(b)(6) because party was ill, incarcerated and without counsel for four years); *United States v.*

*Forty–Eight Thousand, Five Hundred Ninety–Five Dollars,* 705 F.2d 909, 913 (7th Cir. 1983) (setting aside default judgment under Rule 60(b)(1) because defendant lacked funds, was imprisoned in foreign country and lacked legal counsel when default granted); *Hicks v. Secretary of the Air Force,* 594 F.Supp. 690, 691 (D.Me.1984) (setting aside default judgment because defendant was incarcerated, did not receive notice of default until after judgment entered, and defendant responded within seven days of entry of judgment). But here the most Phipps can say is that she was in jail (but not solitary confinement—that lasted for only ten days and did not occur until nearly four weeks after her response to the default motion was due) and that she lacked an attorney to represent her in this particular case when she received notice of the impending default judgment. While a bright-line rule is neither intended nor desired in these cases, Rule 60(b)(1) and the standard for vacating default judgments requires that "cause" for failure to respond be separated from *"good* cause," and "neglect" of litigation from *"excusable* neglect." The standards contained in the cases are justifiably vague, requiring extraordinary circumstances as a sufficient condition to justify disturbing a default judgment, *e.g., C.K.S. Eng'g, Inc.,* 726 F.2d at 1204–05 (collecting cases); *Planet Corp. v. Sullivan,* 702 F.2d 123, 125 (7th Cir.1983), or at least the absence of any willful disregard for duties, simple carelessness, or negligence before a default judgment will be vacated. *C.K.S. Eng'g, Inc.,* 726 F.2d at 1206. We say justifiably vague because, consonant with our deferential standard of review on these matters, the district court is given great latitude in assessing the circumstances of the individual case to discern if either good cause or excusable neglect exists. Though she was without legal counsel for this case and in jail, Phipps had adequate time before her response was due to retain new counsel, file a request for an extension of time to respond, or both— acts which were well within her abilities. Not only was she inattentive to her obligations in the period immediately preceding entry of default, she consistently ignored court orders and hearing dates up to the moment the default judgment was actually entered—an unfortunate choice given the relatively more liberal standard for vacating an entry of default as opposed to an actual default judgment. *See Merrill Lynch Mortgage Corp.,* 908 F.2d at 250; *Breuer Elec. Mfg.,* 687 F.2d at 187. Because she chose to ignore this lawsuit despite the ability to attend to its needs, she deserves to have her default judgment vacated only if every incarcerated litigant who receives adequate notice of an impending default judgment deserves to be excused from the obligations of litigation—a holding which would tear Rule 60(b) relief from its roots of "extraordinary relief," and one which we are simply unwilling to accept.

Further bolstering this conclusion is the theme running through the case law which exhibits a stern predilection for leaving intact default judgments "[w]here it appears that the defaulting party has willfully chosen not to conduct its litigation with the degree of diligence and expediency prescribed by the trial court . . . ." *C.K.S. Eng'g Inc.,* 726 F.2d at 1205 (collecting cases). *See also Textile Banking Co. v. Rentschler,* 657 F.2d 844, 854 (7th Cir.1981). While we eschew any ability (or desire) to investigate the merits of the underlying default judgment when only the denial of a Rule 60(b) motion is appealed, she who willfully disregards deadlines and court orders faces a difficult, if not impossible, task in proving good cause for the default existed. In this sense, willful disregard of one's obligations as a litigant is the antithesis of disregard flowing from a "good cause" or a default based on excusable neglect. The record amply reflects Phipps' continued pattern of willful disregard for this matter, including her failure to cooperate in discovery, her false representations to the court about the assets in her possession, her persistent failure to participate in pretrial proceedings in good faith, her recalcitrant and deceptive behavior and willful refusal to comply with court orders, as well as her unexcused failure to respond to the default motion. Though the "good cause" prong of this test focuses on the litigant's conduct preceding entry of default, it is interesting to note Phipps' willful conduct continued after the default judgment was entered—the district court cited at least three different misrepresentations made by

Phipps in affidavits and arguments in support of her Rule 60(b) motion. Nothing suggests Phipps had good cause to fail to respond to the district court's directives. Instead, the default judgment resulted from continued flagrant disregard for court orders and procedures, supporting the district court's conclusion that Phipps lacked good cause to default, and thus justifying the denial of the Rule 60(b) motion.

■ 2. *"Quick Action."* Nearly five weeks passed after entry of the default judgment before Phipps filed her motion to vacate it. Any attempt to blame this delay on her solitary confinement is unavailing: Phipps was in solitary confinement briefly during the time between entry of default and the default judgment, not between judgment and her Rule 60(b) motion. Because Rule 60(b) focuses on relief from *judgments,* the "quick action" prong of the standard for vacating default judgments must concern itself with the time elapsing between entry of judgment and the motion to vacate. Besides, even if her period of solitary confinement was relevant to the inquiry it in no manner hampered her ability to take quick action to attempt to vacate the default judgment: The record clearly reflects she was able to make and receive telephone calls as well as receive and execute documents. *See* Record at 93, Ex. B. Whether responding more than a month after the entry of a default judgment is "quick action" depends, quite clearly, on the particular circumstances of the defaulted defendant. If, for instance, the defendant (through no fault of his or her own) did not even become aware of the default judgment until one month (or six months) after its entry, maybe trying to vacate the judgment at that late date would be quick enough to satisfy the standard. But here, more than a month elapsed while the defendant was fully aware of the judgment against her and while she was quite capable of securing counsel to rectify the problem. The fact she ultimately did get an attorney who attempted to vacate the judgment is evidence of her ability—even while in jail—to secure legal counsel. If she was able to get an attorney *after* the default judgment was entered, why not before? Phipps does not answer this question to any satisfactory degree. Quick action to attack a

default judgment is required because the cement of finality hardens each and every day beyond the entry of the judgment; the winning party increasingly fashions its expectations and affairs on having and holding the judgment as time passes. Here, Phipps' deceptive and dilatory conduct upset a long awaited and scheduled trial date. The default judgment was awarded to the McEwen Estate, in part, for its diligent and persistent efforts to obtain restitution for the losses caused by Phipps. We simply cannot conclude that no reasonable person would agree with the district court's assessment that Phipps waited too long before filing her Rule 60(b) motion.

■ 3. *"Meritorious Defense."* Lastly, Phipps failed to demonstrate she had a meritorious defense to the entry of the default judgment as a sanction for willfully failing to disclose assets to Jones and the district court and refusing to participate in discovery and other pre-trial proceedings in good faith. A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis. *Merrill Lynch Mortgage Corp.,* 908 F.2d at 252; *Breuer Elec. Mfg.,* 687 F.2d at 186. Of course, even if Phipps had a meritorious defense, her failure to demonstrate good cause for her default and quick action to rectify the default is sufficient to deny her motion to vacate the default judgment. *Pretzel & Stouffer,* 28 F.3d at 45–46. Because, however, Phipps' defense fell so short of being meritorious we comment simply for the sake of completeness. With her motion to vacate the default judgment, Phipps filed the response she would offer to the motion for a default judgment if given the chance. In support of this response she tendered affidavits attempting to explain why she did not list some of the items in her possession on her list of assets. The district court rejected these meager excuses because she was unable to offer any explanation for omitting some valuables and offered explanations which were "too implausible to be given credit" for others. Mem.

Op. at 10. The underlying plot of this tale needs no elaboration: As of the time the default motion was filed, Phipps had been caught "red handed" on two legal fronts. The circumstances of her Wisconsin criminal encounter combined with her recent representations in the Illinois district court made a truthful response to the default motion an impossible task—or at least one so potentially hazardous to her positions in pending litigation that she chose not to undertake it. Having found her explanations for not listing assets unsatisfactory, and to a large extent lacking any factual basis, the district court did not abuse its discretion in concluding Phipps' defense was meritless.

### B. Request for Sanctions

Jones seeks attorney fees under Rule 38 of the Federal Rules of Appellate Procedure. Under Rule 38, sanctions are appropriate when an appellate brief "is primarily comprised of misleading arguments and legally inaccurate propositions, based on irrelevant, overruled, or non-controlling case law." *Williams v. United States Postal Serv.*, 873 F.2d 1069, 1074–75 (7th Cir.1989). While Phipps' brief is certainly no model of appellate advocacy or legal acumen, and though it is littered with several irrelevant arguments and issues beyond our review, she did at least address and argue the central question in this case, namely whether the district court abused its discretion in denying her motion to vacate the default judgment. Given this, we cannot say her appeal completely lacked "a colorable basis in law and fact," *Tomcyk v. Blue Cross & Blue Shield*, 951 F.2d 771, 779 (7th Cir.1991), *cert. denied*, 112 S.Ct. 2274 (1992), making Rule 38 sanctions inappropriate.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED and the request for attorney fees is DENIED.