UNITED STATES of America, Plaintiff–Appellee,

v.

**Ila MINSON, Defendant–Appellant.**

**No. 01–1360.**

United States Court of Appeals, Seventh Circuit.

Submitted June 27, 2001.*

Decided June 29, 2001.

Rehearing Denied Aug. 6, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a).

Before POSNER, RIPPLE, and DIANE P. WOOD, Circuit Judges.

## ORDER

On September 1, 2000, the United States filed this civil student loan collection case against Ila Minson. Despite having more than 90 days to file an answer, Ms. Minson failed to do so, and the district court entered a default judgment against her. Ms. Minson filed a motion requesting that the default judgment be set aside based on "excusable neglect" under Fed.R.Civ.P. 60(b)(1). The district court denied her motion, and Ms. Minson appeals. We affirm.

The government sent Ms. Minson a waiver of service of summons on September 8, 2000, which she signed, giving her 60 days to file an answer. She did not do so. On November 13, 2000, the United States moved for entry of default and default judgment. That same day, Ms. Minson filed *pro se* a document labeled "Pleading" that stated: "Defendant entered plead [sic] due to ineffectual attorney whom Plaintiff retain, but failed to appear on her behalf. Defendant enter a not-guilty plea." Even though Ms. Minson failed to provide proof of service, the district court nonetheless construed the document as an entry of appearance, an opposition to the motion for default, and a request for time to answer the complaint. Finding that Ms. Minson had shown good cause for her failure to answer in a timely manner, the court on November 17, 2000, denied the motion for default and gave Ms. Minson 30 additional days to answer.

Ms. Minson still did not file an answer, however, and on January 4, 2001, the United States again moved for entry of default and default judgment. The following day, Ms. Minson responded to the government's motion, claiming that she had attempted to file her answer on December 22, 2000, several days after it was due, but was led to believe that the courthouse was closed for the holidays. She also cited inclement weather and her *pro se* status as reasons for her failure to answer in time. She still did not file an answer. Questioning the "sincerity and truthfulness" of Ms. Minson's excuses, the district court on January 16, 2001, entered a default judgment against her.

One week later, Ms. Minson filed two documents: "Motion To Set Aside January 17, 2001 Default Judgment Against Defendant, who claims of Meritorious Defense" and "Motion With Respect for Default Judgement be Set aside As 'Excusable neglect,'" which the court construed together as a motion to vacate the default judgment under Fed.R.Civ.P. 55(c). The district court determined, however, that Ms. Minson's 55(c) motion did nothing more than "rehash" arguments that the court had previously rejected. The court nonetheless considered each of her arguments and determined that she had not established good cause for her default; the court accordingly denied relief on January 31, 2001.

The following day, Ms. Minson filed another document entitled "Motion with Respect for Default Judgment be Set Aside," reiterating the same reasons for her default. The court denied this motion on February 5, 2001, for the same reasons stated in the January 31 order. Ms. Minson filed her notice of appeal on February 8, 2001.

There is some doubt in the record as to whether Ms. Minson appeals the underlying default judgment or the denial of her 55(c) motion to vacate. Contrary to Fed. R.App. P. 3(c), which requires a notice of appeal to "designate the judgment, order, or part thereof appealed from," Ms. Minson's notice of appeal does not specify the order from which she is appealing. But there is language in her docketing statement that, if liberally construed, suggests she is appealing both orders. Moreover, her notice of appeal was filed within 60 days of the default judgment, giving us jurisdiction to review both orders. Fed. R.App. P. 4(a)(1)(B). We will resolve any doubts in her favor and review both orders. *See Smith v. Barry,* 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) ("Courts will liberally construe the requirements of Rule 3").

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[f]or good cause shown the court may set aside an entry of default." Once a default judgment is entered however, as in this case, the movant must satisfy the criteria of Fed.R.Civ.P. 60(b), which establishes a "high hurdle" for parties seeking relief from final judgment. *See* Fed.R.Civ.P. 55(c), 60(b); *Jones v. Phipps,* 39 F.3d 158, 162 (7th Cir.1994). On appeal Ms. Minson argues that her failure to meet the district court's filing deadline was caused by extenuating circumstances that constituted "excusable neglect" within the meaning of Rule 60(b)(1).

The abuse of discretion standard governs both our consideration of the district court's entry of a default judgment and our review of the district court's denial of a motion to vacate that judgment. *See Robinson Engineering Co. et al. v. George,* 223 F.3d 445, 448 (7th Cir.2000). To obtain relief from a default judgment, the movant must show good cause for the default. *Pretzel & Stouffer v. Imperial Adjusters, Inc.,* 28 F.3d 42, 45 (7th Cir.1994); *Jones,* 39 F.3d at 164. The district court is given great latitude in assessing the circumstances to discern if good cause for a default exists. *Jones,* 39 F.3d at 164. Reversal is appropriate only if we conclude that no reasonable person could agree with the district court's judgment. *Pretzel & Stouffer,* 28 F.3d at 45.

█ Although *pro se* litigants are afforded various procedural protections, they are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines. *Phipps,* 39 F.3d at 163. The facts here amply demonstrate that the district court did not abuse its discretion in entering default judgment against Ms. Minson. When a party against whom judgment is sought fails to plead or otherwise defend, a default shall be entered. Fed.R.Civ.P. 55(a). Ms. Minson failed to file a timely answer within 90 days, even though the court granted her one extension and warned her that failure to answer would result in a default. The court considered the reasons offered by Ms. Minson, such as inclement weather and the holidays, and determined that her excuses "did not justify the entire delay in this case."

Indeed, despite the weather, lack of an attorney, and the other problems she cites, Ms. Minson had no difficulty navigating the court system in this case to file numerous documents other than an answer. Even assuming *arguendo* that Ms. Minson is correct that the courthouse was closed on December 22, 2000 (a claim that the district court determined was untrue), she

does not explain why she did not simply file the answer the next day the courthouse was open, or any other date before the default judgment was entered on January 16, 2001.[1]

For the same reasons, we cannot say that the district court abused its discretion in finding that Ms. Minson failed to show good cause for her default so as to warrant the "extraordinary" relief available under 60(b). *See McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000). Ms. Minson's 60(b)(1) motion did nothing more than reiterate the same excuses for her delay already rejected by the court. Accordingly, the judgment of the district court is AFFIRMED.

1. Ms. Minson correctly notes that Fed. R.Civ.P. 6(a) gives parties an extra day for filing when the clerk's office is closed due to inclement weather. Fed.R.Civ.P. 6(a). The relevance of this rule here is unclear, however, because Ms. Minson represented that the clerk's office was closed on December 22, 2000, due to the holidays, not inclement weather. In any event, the rule is of no help to her, because she did not attempt to file the answer the next day the clerk's office was open—or on any other date before the government filed its motion for default nearly two weeks later.

