Glen TATE, et al., Plaintiffs,

v.

**RIVERBOAT SERVICES, INC., Defendant.**

No. 2:03CV262.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 19, 2004.

Ernest T. Rossiello, Ernest T. Rossiello & Associates PC, Chicago, IL, for Plaintiffs.

Julia D Mannix, Davis Mannix and McGrath, Chicago, IL, for Defendant.

### *ORDER*

MOODY, District Judge.

On October 29, 2003, defendant Riverboat Services, Inc. ("defendant" or "RSI") filed a Motion to Vacate Entry of Default and Entry of Default Judgment ("motion to vacate") seeking to vacate the default judgment entered in favor of plaintiffs and against defendant on September 11, 2003. Plaintiffs' timely responded to defendant's motion to vacate on November 19, 2003, and, in connection with their response, filed a Motion for Judicial Notice of Court Docket and Pleadings ("motion for judicial notice") on December 11, 2003. The court will now address both defendant's motion to vacate and plaintiffs' motion for judicial notice.

## I. BACKGROUND

On June 27, 2003, plaintiffs filed with this court a claim for seamen's wages pursuant to the general maritime laws of the United States. (Pls.' Compl. at 2). In their complaint, plaintiffs allege that defendant, as master of the vessel M/V Winstar, owes plaintiffs overtime wages for work plaintiffs performed on the Winstar in excess of forty (40) hours per week.

(Pls.' Compl. at 3, ¶¶ 3–4). Defendant was served with the complaint on July 9, 2003. (Def.'s Mot. Vacate at 1, ¶ 2). After defendant failed to answer the complaint or to respond to it in a timely manner, plaintiffs moved for entry of default on August 7, 2003. On September 2, 2003, plaintiffs made a demand for judgment in the amount of $1,187,215.50 upon the Clerk of this court. (Def.'s Mot. Vacate at 1, ¶ 4). Nine days later, on September 11, 2003, the Clerk entered default and default judgment in favor of plaintiffs' and against defendant pursuant to FED.R.CIV.P. 54(c) and FED.R.CIV.P. 55(b)(1). (Def.'s Mot. Vacate at 1, ¶ 5). However, it seems that neither counsel for defendant, Julia Mannix, nor defendant were immediately aware of the default judgment against RSI. (Def.'s Mot. Vacate at 1–2, ¶¶ 6, 10). Apparently, Ms. Mannix first learned of the entry of default and default judgment on September 16, 2003, five days after the Clerk had made the entry, (Def.'s Mot. Vacate at 2, ¶ 10); Ms. Mannix discovered the default judgment against defendant after searching court records in the Northern District of Indiana for related filings made by plaintiffs' attorney, Ernest T. Rossiello, (Def.'s Mot. Vacate at 1–2, ¶ 6).

On October 29, 2003, defendant filed a motion with this court to vacate the entry of default and the entry of default judgment against it pursuant to FED.R.CIV.P. 60(b). Plaintiffs timely responded to defendant's motion by filing its "Answer to Defendant's Motion to Vacate Order of Default and Default Judgment" ("plaintiffs' response") on November 19, 2003. In connection with certain assertions in their response, plaintiffs also filed a motion for judicial notice on December 11, 2003, asking this court to take notice of several documents filed in the related matter of *Tate, et al. v. Showboat Casino Marina P'ship, et al.,* No. 02 C 3432 (N.D.Ill.).

Defendant has not responded to plaintiffs' motion for judicial notice.

The court shall now address both defendant's motion and plaintiffs' motion, however, it will do so in the opposite order in which the motions were received, as plaintiffs' motion for judicial notice has the potential to impact certain issues raised by defendant it is motion to vacate.

## II. PLAINTIFFS' MOTION FOR JUDICIAL NOTICE

■ Pursuant to Fed.R.Evid. 201,[1] plaintiffs request that this court take judicial notice of several documents[2] filed in *Tate, et al. v. Showboat Casino Marina P'ship, et al.*, No. 02 C 3432, instituted in the Northern District of Illinois, and dismissed against defendant pursuant to Fed.R.Civ.P. 41(a)(1)(i) on December 3, 2002 [hereinafter the Illinois *Tate* case].

This court may properly "take notice of proceedings in other courts ... if the proceedings have a direct relation to matters at issue." *Green v. Warden*, 699 F.2d 364, 369 (7th Cir.1983) (citing *Barrett v. Baylor*, 457 F.2d 119, 124 n. 2 (7th Cir.1972); and, *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979)). Plaintiffs assert that the items it has presented for judicial notice are directly related to defendant's motion to vacate as, according to plaintiffs, the court documents will demonstrate that defendant "consented" to its dismissal in the Illinois *Tate* case. (*See* Pls.' Mot. Judicial Notice at 2). Therefore, plaintiffs contend, the documents will discredit defendant's argument that it has a meritorious defense to this action[3] based upon the "two dismissal rule" found in Fed.R.Civ.P. 41(a)(1).[4] (*See* Pls.' Mot. Judicial Notice at 2). Defendant

1. Federal Rule of Evidence 201 provides, in pertinent part:
   (a) **Scope of rule.** This rule governs only judicial notice of adjudicative facts.
   ... (c) **When discretionary.** A court may take judicial notice, whether requested or not.
   (d) **When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

2. Plaintiffs ask this court to take judicial notice of the following documents filed in *Tate, et al. v. Showboat Casino Marina P'ship, et al.*, No. 02 C 3432 (N.D.Ill.): (1) plaintiffs' Second Amended Complaint; (2) plaintiffs' Request for Default against Riverboat Services, Inc. and Robert Heitmeier; (3) a Notice of Motion filed by Riverboat Services, Inc.; (4) a Motion to Dismiss for Lack of Jurisdiction filed by Riverboat Services, Inc. and Robert Heitmeier; (5) a docket entry showing that the Motion to Dismiss for Lack of Jurisdiction filed by Riverboat Services, Inc. and Robert Heitmeier was entered on the docket on November 27, 2002 by the Court Clerk; (6) a Notice of Dismissal as to Riverboat Services, Inc. and Robert Heitmeier filed by plaintiffs pursuant to Fed.R.Civ.P. 41(a)(1)(i); and, (7) an Order entered by Judge St. Eve docketed on June 18, 2003.

3. In order to prevail on its Rule 60(b) motion to vacate the default judgment against it, defendant must prove three elements, one of which is the existence of a meritorious defense to the original action. *See* discussion *infra*, at Section III, ¶ 2 (citing *U.S. v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1313 (7th Cir. 1995); *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir.1994); *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir.1989)). By asking this court to take judicial notice of certain documents filed in the Illinois *Tate* case, it seems that plaintiffs hope to discredit one of defendant's potentially meritorious defenses to this action, and thereby prevent defendant from prevailing on its Rule 60(b) motion.

4. Federal Rule of Civil Procedure 41(a)(1) provides, in pertinent part:

   ....Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

has not objected to plaintiffs' request for judicial notice of the stated documents. Therefore, as this court may properly take notice of proceedings in other courts, and as the documents presented by plaintiffs for judicial notice seemingly "have a direct relation to matters at issue," *Green,* 699 F.2d at 369, this court hereby **GRANTS** plaintiffs' Motion for Judicial Notice of Court Docket and Pleadings (docket # 12) pursuant to Fed.R.Evid. 201.

## III. DEFENDANT'S MOTION TO VACATE

Defendant seeks to set aside the default and judgment entered against it on September 11, 2003, pursuant to Fed.R.Civ.P. 60(b). Relief under Fed.R.Civ.P. 60(b) is an "extraordinary remedy and is granted only in exceptional circumstances." *McCormick v. City of Chicago,* 230 F.3d 319, 327 (7th Cir.2000) (internal quotation marks and citation omitted). However, because "the philosophy of modern federal procedure favors trials on the merits," *A.F. Dormeyer Co. v. M.J. Sales & Distrib. Co.,* 461 F.2d 40, 43 (7th Cir.1972) (internal quotation marks and citation omitted), Rule 60(b) relief is granted more liberally in those cases where the relief is sought to vacate a default judgment, *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1205 (7th Cir.1984) ("A default judgment, like a dismissal, is a harsh sanction which should usually be employed only in extreme situations.... Thus, it is appropriate that [Rule 60(b)] be liberally applied in the context of default judgments...."). Indeed, "federal courts have uniformly held that the federal rules providing for setting aside a default and judgment should be given liberal construction." *Dormeyer,* 461 F.2d at 42 (citations omitted). Thus, "default judgments *should generally be set aside* where the moving party acts with reasonable promptness, alleges a meritori-

ous defense to the action, and where the default has not been willful." *Id.* at 43 (internal quotation marks and citation omitted) (emphasis added).

■ It is in the context of a default judgment that defendant seeks relief under Rule 60(b). In particular, defendant seeks relief pursuant to Rule 60(b)(1) which authorizes courts to free a party from the constraints of a final judgment against it for reasons of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). To prevail on its Rule 60(b)(1) motion to vacate the default judgment against it, defendant must show: (1) good cause for the default; (2) quick action to correct the default; and, (3) the existence of a meritorious defense to the original action. *See U.S. v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply,* 55 F.3d 1311, 1313 (7th Cir.1995); *see also Jones v. Phipps,* 39 F.3d 158, 162 (7th Cir.1994); *United States v. Di Mucci,* 879 F.2d 1488, 1495 (7th Cir.1989). Accordingly, the court will now examine these three elements in turn.

### A. *Good Cause*

Federal Rule of Civil Procedure 60(b)(1) provides that good cause can consist of "mistake, inadvertence, surprise, or excusable neglect." *See* Fed.R.Civ.P. 60(b)(1); *see also Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). It is the latter—"excusable neglect"—which defendant asserts was the cause of its failure to respond to plaintiffs' complaint in a timely manner, and thus, the cause of the default judgment entered against it. (*See* Def.'s Mot. to Vacate at 2, ¶ 9).

■ The Supreme Court has adopted a "flexible understanding" of "excusable neglect," *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380, 389, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993),

which "encompass[es] situations in which the failure to comply with a filing deadline is attributable to *negligence.*" *Id.* at 394, 113 S.Ct. 1489 (emphasis added). Defendant admits that it was negligent in responding to plaintiffs' complaint, (*see* Def.'s Mot. to Vacate at 2, ¶ 9; Def.'s Reply at 2), and plaintiffs seem to agree that *ordinary* negligence caused defendant to miss the deadline for filing an answer to their claims for seamen's wages, (Pls.' Resp. at 1). However, plaintiffs argue that *ordinary* negligence cannot constitute excusable neglect, and therefore, a showing of such negligence is not enough to warrant relief under RULE 60(b)(1). (Pls.' Resp. at 4, ¶ 9) ("Case law in the Seventh Circuit holds that something more than mere negligence must be shown."). To support this argument, plaintiffs cite a number of pre–1993 Seventh Circuit cases which effectively state that in order to demonstrate excusable neglect, the defaulting party moving for relief under RULE 60(b)(1) must show that its failure to comply with a filing deadline was the result of exceptional circumstances that were not within its meaningful control. (Pls.' Resp. at 4, ¶ 9) (citing, e.g., *Zuelzke Tool & Eng'g Co. v. Anderson Die Castings*, 925 F.2d 226, 229 (7th Cir.1991); *Di Mucci*, 879 F.2d at 1496). Yet, as already stated above, with its 1993 decision in *Pioneer*, the Supreme Court made it quite clear that "for purposes of Rule 60(b), 'excusable neglect'" does indeed "encompass situations in which the failure to comply with a filing deadline is attributable to *negligence.*" 507 U.S. at 394, 113 S.Ct. 1489 (emphasis added).[5] Thus, the fact that defendant's failure to respond to plaintiffs' complaint was caused by ordinary negligence, rather than some extraordinary circumstance over which the defendant did not have control, does not preclude this court from finding that defendant's actions constitute excusable neglect and therefore warrant relief under RULE 60(b)(1).

■ Ultimately, the important question here is whether or not defendant's "neglect" is "excusable." *See id.* at 395, 113 S.Ct. 1489. In determining whether defendant's neglect is excusable, this court must take account of "all relevant circumstances" surrounding defendant's failure to timely respond to plaintiffs' complaint, including: (1) defendant's reason for failing to comply with its filing deadline; (2) the potential impact of defendant's neglect upon judicial proceedings; (3) the danger of prejudice to plaintiffs should defendant's neglect be deemed excusable; and, (4) whether defendant acted in good faith. *Id.* Accordingly, this court shall now review the "relevant circumstances" of this case in order to determine whether defendant's failure to timely respond to plaintiffs' complaint is, in fact, "excusable."

First, defendant argues that the delay in responding to plaintiffs' complaint was the result of confusion over several lawsuits pending, or recently dismissed against defendant, all involving the same overtime wage claims presented by the same groups of plaintiffs who are, (or were), all represented by the same attorney. (Def.'s Mot. to Vacate at 4, ¶ 16).[6] In particular, defen-

5. In *Robb v. Norfolk,* the Seventh Circuit noted that the Supreme Court's decision in *Pioneer* effectively rejected the Circuit's pre–1993, "narrow approach" to defining excusable neglect. 122 F.3d 354, 359 (7th Cir. 1997). Moreover, in at least two post-*Pioneer* decisions, the Seventh Circuit has "explicitly acknowledged that *Pioneer* broadened the def-

inition of 'excusable neglect.'" *Id.* (citing *Matter of Bulic,* 997 F.2d 299, 302 (7th Cir. 1993); and, *Matter of Singson,* 41 F.3d 316, 319 (7th Cir.1994)).

6. A vast array of different combinations of the same plaintiffs have instituted, at least, four separate actions (not including the above-cap-

dant points to confusion caused by the nearly identical-styled captions of the instant action and the Illinois *Tate* case, and the nearly identical list of plaintiffs involved in both lawsuits. (Def.'s Reply at 3). Accordingly, defendant argues that confusion over "which claims were proceeding, which claims were resolved and whether there were, in fact, new lawsuits being filed" against defendant, (Def.'s Mot. Vacate at 4, ¶ 16), caused defendant's attorney to neglect her obligation to respond to plaintiff's complaint, and this negligence resulted in the default judgment against defendant, (*see* Def.'s Mot. Vacate at 4, ¶ 20).

Plaintiffs admit that there were, and are a number of cases pending against defendant involving the same issues, the same or similar plaintiffs, and the same plaintiffs' attorney. (Pls.' Resp. at 5–6, ¶¶ 12–15). Nevertheless, plaintiffs argue that these other cases are "of no moment," (Pls.' Resp. at 6, ¶ 12), as any confusion caused by them cannot excuse defendant's default, (*see* Pls.' Resp. at 7, ¶ 16) (" 'Confusion' has never been a reason under Rule 60(b)(1) FRCP for relief from a judgment or default order."). However, plaintiffs do not cite to any law to support this argument, nor can this court find any cases stating that confusion over multiple cases involving the same plaintiffs and claims is not a factor that courts may consider when determining whether a party's neglect in complying with filing deadlines is excusable. Perhaps confusion alone cannot excuse a party's default, but the court must review "all [the] relevant circumstances" surrounding a default. *See Pioneer*, 507

U.S. at 395, 113 S.Ct. 1489. Therefore, this court fails to see why a *genuine* confusion over multiple similar cases involving the same plaintiffs and defendant may not, in combination with all of the other relevant circumstances this court must look at, aid in excusing a defaulting party's neglect of deadlines. And, it seems to this court, that defendant's confusion was in fact genuine as, after all, even this court was, at first, a bit confused over "which claims were proceeding [and] which claims were resolved" against defendant. (*See* Def.'s Mot. Vacate at 4, ¶ 16). Moreover, this court's general experience confirms that multiple lawsuits in multiple venues involving the same claims by the same parties can cause a certain amount of confusion which sometimes (unfortunately) results in missed filing deadlines.

Second, defendant argues that because it acted promptly in seeking to vacate the default judgment against it, neither plaintiffs nor any proceedings have been prejudiced by defendant's neglect, and neither plaintiffs nor any proceeding would be prejudiced should this court vacate the default judgment in this case. (*See* Def.'s Mot. Vacate at 2, ¶ 10; Def.'s Reply at 2–3). The court agrees. First, as this matter did not progress past the complaint, vacating the judgment in this case would not prejudice any judicial proceedings. Second, as this case is relatively young, (it was instituted in this court less than a year ago), it is improbable that any necessary and/or important information concerning this case would have been lost or would be prejudicially difficult to retrieve. In addition, plaintiffs' attorney is engaged in at

---

tioned matter) against defendant, each of which concerned the same overtime wage claims, and each of which involved plaintiffs' current attorney, Ernest T. Rossiello. These actions include (in no particular order): (1) *Harkins v. Riverboat Services, Inc.,* No. 99 CV 123, filed in the Northern District of Illinois;

(2) *Tate v. Showboat Casino Marina P'ship,* No. 02 C 3433, filed in the Northern District of Illinois; (3) *Ringbauer v. Riverboat Services, Inc.,* No. 2:02 CV 486, filed in the Northern District of Indiana; and (4) *Williamson v. Riverboat Services Inc.,* No. 2:03 CV 165, filed in the Northern District of Indiana.

least two other currently-active cases in the Northern District of Indiana involving the same overtime wage claims [7] thus making it likely that little additional work would be needed to pursue this lawsuit should the default judgment be vacated.

Ultimately, should this court vacate the default and judgment against defendant, plaintiffs would merely be required to pursue their case on the merits of their claims, or rather, do what they were (presumably) prepared and capable of doing before default judgment was entered. Certainly, assuming plaintiffs are indeed entitled to overtime wages from defendant, vacating the default judgment against defendant may delay the receipt of those wages from sometime in the near-future to sometime in the less-near-future, but such a delay seems relatively minor in comparison to the cost suffered by defendant—a judgment against it of over one million dollars—should the default judgment be allowed to stand.[8] Moreover, any prejudice suffered by a minor delay in receiving their overtime wages—should plaintiffs even be entitled to those wages—waxes thin against the Seventh Circuit's "well-established policy favoring a trial on the merits over a default judgment," *C.K.S. Engineers*, 726 F.2d at 1205 (citation omitted); a policy which helps to promote a *fair* system of justice by ensuring that decisions made by the administrators of that system are generally based upon a full presentation of the evidence. Therefore, were this court to vacate the default judgment against defendant, it would be very unlikely that plaintiffs or any proceedings would suffer prejudice.

Finally, there is not any evidence to suggest that defendant acted in any other manner than in good faith while dealing with (or neglecting to deal with) this lawsuit; even plaintiffs do not argue that defendant acted in bad faith. (*See generally* Pls.' Resp.). Ultimately, since 1999, defendant's attorney, Ms. Mannix, has been actively involved in defending RSI in other related actions. (Def.'s Mot. Vacate at 4, ¶ 17). Indeed, the day after plaintiffs' attorney moved for entry of default in this case, Ms. Mannix was engaged in defending RSI in the *Harkins* matter. (Def.'s Mot. Vacate at 4, ¶ 18).[9] The fact that

---

7. Plaintiffs' attorney is currently actively involved in litigating both *Tate v. M/V Winstar*, No. 2:03 CV 432, and *Williamson v. Riverboat Services, Inc.*, No. 2:03 CV 165, in the Northern District of Indiana. Both *Williamson* and *M/V Winstar* appear to involve the same overtime wage claims that plaintiffs have presented in this case, and *M/V Winstar* appears to involve the same plaintiffs as those involved in this case.

8. In their response to defendant's motion to vacate, plaintiffs assert that defendant will not have to pay "a single dollar" of the judgment against it as, under the terms of the contract in which Harrah's bought-out RSI's contract for marine services in September 2001, Showboat (owned by Harrah's) is required to pay "the entire judgment as it is for wages." (Pls.' Resp. at 11, ¶ 23). By pointing this out, it seems as if plaintiffs are arguing that because RSI may not be paying the over-one-million dollar judgment against it, it cannot

be prejudiced by that judgment. (*See* Pls.' Resp. at 11, ¶ 23). However, even if this court were to assume that plaintiffs are correct, and that RSI will not pay a "single dollar" of the judgment against it, it does not necessarily follow that RSI therefore suffers no prejudice; it may be that RSI must at sometime pay Showboat back, or perhaps a judgment against RSI will cost RSI future contracts or loans or credit. Second, and most important, RSI asserts several meritorious defenses against the judgment in this case, (as will be discussed later in this order); and, if the judgment in this case is invalid for any reason, it cannot stand regardless of who will pay or not pay the damages caused by default.

9. It is interesting that although plaintiffs' attorney was well aware that Ms. Mannix has represented RSI in numerous suits, including in the *Harkins*, Illinois *Tate*, and *Williamson*

defendant and Ms. Mannix have been actively involved in litigating other similar suits involving different combinations of the same plaintiffs and the same overtime wage claims strongly suggests, at least to this court, that neither defendant nor its attorney have acted willfully in neglecting to timely respond to plaintiffs' complaint in this case.

■ Therefore, as neither the plaintiffs nor any judicial proceeding would be appreciably prejudiced by this court's decision to vacate the default judgment against defendant, and as the default judgment rendered against defendant is attributable to a genuine confusion and was not caused willfully, this court believes the circumstances of this case excuse defendant's negligence in failing to respond to plaintiffs' complaint in a timely manner. Accordingly, this court finds that the circumstances of this case constitute "excusable neglect" within the meaning of RULE 60(b)(1). Defendant has therefore demonstrated "good cause" for its default.

B. *Quick Action to Correct the Default*

RULE 60(b) provides that a motion for relief from a judgment by reason of mistake, inadvertence, excusable neglect, etc., "shall be made within a reasonable time," but "not more than one year after the judgment, order, or proceeding was entered or taken." FED.R.CIV.P. 60(b). The defendant filed its motion for relief under RULE 60(b)(1) on October 29, 2003, approximately one-and-a-half months after learning of the entry of a default judgment against it.[10] Thus, defendant was well within the one-year period prescribed by FED.R.CIV.P. 60(b). However, in some cases, even a RULE 60(b)(1) motion filed within one year may be rejected as untimely if not made within a *reasonable* time. *Berwick Grain Co. v. Illinois Dep't of Agric.*, 189 F.3d 556, 560 (7th Cir.1999) (citation omitted). "What constitutes a 'reasonable time' ultimately depends on the facts of each case including the reason for delay, the practical ability of the litigant to have learned about the grounds of the judgment earlier, and the degree of prejudice to the other parties." *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir.1986) (internal quotation marks and citation omitted).

The delay between the filing of defendant's motion and the entry of default judgment was approximately fifty (50) days. Defendant claims that this delay was ultimately due to "scheduling difficulties." (Def.'s Mot. Vacate at 2, ¶ 10). Generally, "scheduling difficulties" alone, (without further explanation), would not be enough to convince this court to excuse such a delay. However, considering such scheduling difficulties in combination with the Seventh Circuit's preference for litigating claims on the merits rather than letting harsh sanctions, like a default judg-

---

matters, (all cases in which plaintiffs' attorney was the opposing counsel), he did not bother to mention the above-captioned matter to Ms. Mannix, or to inform her of the default judgment entered in the case. Certainly, plaintiffs' attorney had no legal duty to inform Ms. Mannix of the existence of this case and default judgment against her client, but to not do so seems very unprofessional, and perhaps, a bit underhanded. *See Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 677 (7th Cir. 1987) (Seventh Circuit criticized plaintiff's attorney for failing to extend "the usual profes-

sional courtesy extended to fellow professionals before the bar of informing the defendant before the entry of default judgment").

10. The Clerk of this court entered a default and default judgment against defendant in the amount of $1,187,215.50 on September 11, 2003. However, defendant claims that it did not become aware of the default judgment against it until September 16, 2003. (Def.'s Mot. to Vacate at 2, ¶ 10).

ment, stand, *see C.K.S. Engineers,* 726 F.2d at 1205, and considering the other relevant circumstance of this case, such as the fact that the delay is unlikely to prejudice plaintiffs' position or claims,[11] it seems that fifty days is not so tardy as to compel denial of defendant's motion. More importantly, neither defendant nor its attorney have shown any disrespect for, or have a history of demonstrating disrespect for the court or its processes, and, where such is the case, "courts have been inclined towards leniency," *Palmer v. City of Decatur,* 814 F.2d 426, 430 n. 6 (7th Cir.1987) (internal quotation marks and citations omitted); this is especially true in the context of vacating a default judgment, *see C.K.S. Engineers,* 726 F.2d at 1205 ("A default judgment, like a dismissal, is a harsh sanction which should usually be employed only in extreme situations.... Thus, it is appropriate that [RULE 60(b)] be liberally applied in the context of default judgments...."). Accordingly, this court finds that defendant has filed its RULE 60(b)(1) motion within a reasonable time after default judgment was entered against it.

## C. *Meritorious Defenses*

Not only must defendant show that it had good cause for the default and that it acted quickly in attempt to cure the default in order to prevail on its RULE 60(b)(1) motion, but, defendant must also demonstrate that it has a "meritorious defense" to plaintiffs' claims. *Indoor Cultivation Equip.,* 55 F.3d at 1313; *Phipps,* 39 F.3d at 162; *Di Mucci,* 879 F.2d at 1495. This does not mean that defendant needs to prove that its defense would, beyond a doubt, succeed in defeating the default judgment against it. *Phipps,* 39 F.3d at 165. Rather, defendant need only present a defense "which at least raises a serious

question regarding the propriety of [the] default judgment and which is supported by a developed legal and factual basis." *Id.*

In its motion to vacate the default judgment against it, defendant asserts that the claims of several of the plaintiffs in this action are barred by *res judicata.* (Def.'s Mot. Vacate at 7, ¶ 26). Defendant argues that several of the plaintiffs involved in this action have sued defendant at least twice before, (in the *Harkins,* Illinois *Tate* and/or *Ringbauer* matters), each time voluntarily dismissing their claims pursuant to FED.R.CIV.P. 41(a)(1), which "only allows the plaintiff [sic] the right to dismiss their claims, without prejudice, once in order to refile." (Def.'s Mot. Vacate at 7, ¶ 26; Def.'s Reply at 5–6); *see also* FED.R.CIV.P. 41(a)(1) ("Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States ...."). Therefore, defendant asserts that the claims of these plaintiffs have already been adjudicated on the merits, and such plaintiffs are thus barred from litigating this suit against defendant. (Def.'s Mot. Vacate at 7, ¶ 26; Def.'s Reply at 5–6); *see also* FED.R.CIV.P. 41(a)(1).

Plaintiffs readily admit that at least one of them—plaintiff Ringbauer—has filed more than one suit against defendant in which he voluntarily dismissed his claims pursuant to FED.R.CIV.P. 41(a)(1); and, therefore, plaintiffs allow that Ringbauer may be dismissed, if need be, from the instant action. (Pls.' Resp. at 13, ¶ 26). This admission alone certainly "raises a serious question regarding the propriety of [the] default judgment" against defendant.

---

11. *See supra,* at Section III.A.

*See Phipps,* 39 F.3d at 165. Indeed, if Ringbauer is barred from bringing his claim against defendant, then the default judgment against defendant is wholly inappropriate as it includes plaintiff Ringbauer's claim.

Even without plaintiffs' admission however, defendant nevertheless still has a meritorious defense based upon *res judicata.* The docket reports for both the *Ringbauer* and *Harkins* cases, (provided to this court by defendant), and plaintiffs' Notice of Dismissal in the Illinois *Tate* case, (of which this court has taken judicial notice), demonstrate that many of the plaintiffs involved in this case have indeed dismissed their claims twice (and even three times in some instances) against defendant pursuant to FED.R.CIV.P. 41(a)(1). Plaintiffs, nevertheless, are adamant that this court ought not to consider the voluntary dismissal of plaintiffs' claims in the Illinois *Tate* case as counting toward the number of RULE 41(a)(1) dismissals they have filed against defendant. According to plaintiffs, defendant "consented" to its dismissal in the Illinois *Tate* case, and the "two dismissal rule" does not apply to dismissals by "consent." (Pls.' Mot. Judicial Notice at 2) (citing *Sutton Place Dev. Co. v. Abacus Mortgage Inv. Co.,* 826 F.2d 637, 640 (7th Cir.1987)) ("[T]he 'two dismissal' rule applies only when the second dismissal is by notice under Rule 41(a)(1). It does not apply to a dismissal by stipulation nor to an involuntary dismissal nor to dismissal by court order under Rule 41(a)(2)."). Yet, nowhere in any case discussing the "two dismissal rule" can this court find anything about "consent." [12] It is true that the "two dismissal rule" does not apply to cases where dismissal is by "stipulation," *see Sutton Place,* 826 F.2d at 640,

but plaintiffs' voluntary dismissal of defendant in the Illinois *Tate* case was not by stipulation; the Notice of Dismissal in that case is signed by plaintiffs only, and a stipulation to dismissal would have required the signatures of all parties appearing in the action. *See* FED.R.CIV.P. 41(a)(1)(ii) ("[A]n action may be dismissed by the plaintiff without order of court ... (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.").

In any event, even if "consent" were important to the "two dismissal rule," there is not any evidence that defendant "consented" to its dismissal in the Illinois *Tate* case. Ultimately, plaintiffs' Notice of Dismissal indicates that they dismissed their claims against defendant pursuant to RULE 41(a)(1)(i), and, indeed, dismissal under RULE 41(a)(1)(i) seems to have been the most appropriate form of dismissal as defendant had not yet filed an answer or a motion for summary judgment so as to require a court order dismissing defendant from the action. *See* FED.R.CIV.P. 41(a)(1). Thus, defendant's argument that the claims of many of the plaintiffs in this action are barred by *res judicata* is sufficiently supported by a developed legal and factual basis, and therefore, the court finds this defense meritorious.

Defendant also argues that it has a meritorious defense based upon a "mistake in the judgment, or actual fraud upon this court." (Def.'s Mot. Vacate at 6–7, ¶ 24). Defendant points out that, in this action, plaintiffs sought overtime wages for the period of time starting in 1997 through January 2003. (Def.'s Mot. Vacate at 6, ¶ 23, Ex. C1–C3). However, defendant argues that its contract for marine services was bought by Harrah's in September

---

**12.** Ultimately, the court is not sure what plaintiffs mean by "consent," and is not even sure why "consent" might matter, unless by "consent" plaintiffs actually mean "stipulation."

2001, and once the contract was bought, defendant ceased to be the employer of any marine crew. (Def.'s Mot. Vacate at 6, ¶ 23). Therefore, the default judgment against defendant wrongfully included plaintiffs' back wages for the period after the 2001 buyout. (Def.'s Mot. Vacate at 6, ¶ 23). In addition, defendant notes that at least one plaintiff in the current action was never employed by defendant, yet requested, and, by virtue of the default judgment, was granted overtime wages from RSI for the period of November 2001 through August 2002. (Def.'s Mot. Vacate at 6, ¶ 23).

Plaintiffs admit that there was a contract buyout, but argue that because defendant did not provide any documentary support for its allegations that, after the buyout, some of the plaintiffs were employed by Harrah's, defendant's argument cannot succeed as a "meritorious defense" to this action. (*See* Pls.' Resp. 11, ¶ 23). Plaintiffs also argue that, under the terms of the buyout contract, Showboat (owned by Harrah's) will pay the entire judgment as it is for wages, and therefore, because defendant shall pay nothing, the default judgment against it "should ... not be disturbed." (Pls.' Resp. 11, ¶ 23). But plaintiffs miss the point. At this point in the proceedings, the court need not decide who plaintiffs were employed by after the buyout, what the terms of the buyout were, etc.; indeed, this court cannot decide any of these issues as neither defendant nor plaintiffs have provided this court with the contract. Nevertheless, it does not matter as it is enough for the purpose of determining a RULE 60(b)(1) motion that defendant has produced an argument "that raises a serious question regarding the propriety of a default judgment." *Phipps*, 39 F.3d at 165. Defendant has done so,

and plaintiffs have supported that argument by admitting that defendant's contract for marine services was bought by another in 2001. Moreover, regardless of who will pay or not pay the damages caused by default, if the judgment against *this* defendant is incorrect for any reason, then, principles of fairness and justice alone demand that the judgment be vacated.[13]

Accordingly, as defendant has demonstrated good cause for the default, has shown quick action, (given the circumstances of this case), to correct the default, and has clearly presented a meritorious defense to this action, this court hereby **GRANTS** defendant's Motion to Vacate Entry of Default and Entry of Default Judgment (docket # 9).

## IV. CONCLUSION

Based upon the foregoing reasons, this court hereby GRANTS both plaintiffs' Motion for Judicial Notice of Court Docket and Pleadings (docket # 12), and defendant's Motion to Vacate Entry of Default and Default Judgment (docket # 9).

**SO ORDERED.**

---

13. Defendant's motion to vacate ultimately presents several more arguments that it asserts constitute meritorious defenses to this action. The court will not address them now, as it is unnecessary. By themselves, the arguments advanced above call into question the propriety of the default judgment against defendant. *See Phipps*, 39 F.3d at 165.